SIDNEY FISHER *vs.* MARY A. PLIMPTON, administratrix.

On the trial of a claim against the estate of a deceased person on his witnessed promissory note for more than eighty-six hundred dollars, payable on demand with interest, dated eighteen years previously and held during all that time by the claimant; for the purpose of showing that during the period from five to twelve years after the date of the note the claimant's pecuniary condition was such as to make probable that, if the note had been valid, he would have disclosed its possession, or attempted to collect something on it from the maker, who was then in business, possessed of attachable property, and for at least a part of the time in the habit of paying his debts; the testimony of a witness is admissible that during that whole period the claimant owed him a debt of three hundred dollars which he was unable to collect and the claimant professed to be unable to pay, and which was finally released on payment of fifty per cent. thereof; also the testimony of a deputy sheriff that during the same period he had at times made efforts in vain to find attachable property of the claimant; and also testimony that the claimant did not communicate to either of them the fact that he held the note.

APPEAL from the disallowance, by commissioners in the probate court, of a claim against the estate of Horace Plimpton, of which the appellee was administratrix. The claim was on a promissory note made by the intestate to Fisher, dated January 15, 1849, for eighty-six hundred and seventy-nine dollars, payable on demand with interest, and purporting to have been signed in presence of an attesting witness. The answer set up, among other defences, the statute of limitations, denying the genuineness of the attestation; and also alleged that the note was without consideration.

At the trial in this court, before *Hoar*, J., Fisher contended that the debt for which the note was given consisted of money lent at different times in 1845, for which notes were then given, and that a final settlement was made on the date of the

note in controversy, which, he contended, was given for the amount due at that time, the old notes being surrendered.

John J. Clarke, being called by the administratrix as a witness, was allowed to testify, against the objection of the appellant, that, from 1854 to 1861, he held a debt due from Fisher of about three hundred dollars, which he was unable to collect and Fisher professed to be unable to pay, and which was finally compromised in 1861 by taking fifty per cent. thereof; and William P. Baker, a deputy sheriff, who was also called by the administratrix as a witness, was allowed to testify, against the appellant's objection, that between 1854 and 1861 he had at times made efforts, but could find no attachable property of Fisher; and it appeared that Fisher had not communicated to Clarke or Baker that he had this note of Plimpton. The judge admitted this evidence as having a tendency to show that Fisher's pecuniary condition was such, from 1854 to 1861, as to make it probable he would have attempted to collect something on this note of Plimpton, or would have disclosed its possession, if it had been a valid claim.

It appeared that before 1861 Plimpton had engaged in the manufacture of hoop-skirts, and had some stock for that purpose in his possession, but there was no distinct evidence concerning its value, or concerning his condition as to property, except the following: Fisher testified that in 1859 he asked Plimpton how he was getting along, and he replied that he was doing a little, but not enough to pay his way; and in the early part of 1860, Plimpton told him that if ever he was able he should remember him and all his friends; also that in 1859 or 1860 he heard that Plimpton had real estate, and looked at the records in the Norfolk registry, but found none there recorded. John O. Prince testified that he went to work for Plimpton in June 1861; that he was then doing a fair business, meeting his payments promptly, and having a fair stock; but the witness supposed that he was in rather poor circumstances.

The jury returned a verdict for the appellee; and to the admission of the evidence of Clarke and Baker the appellant alleged exceptions.

*W. Colburn,* for the appellant. The evidence was to collateral facts, and so inadmissible. 1 Greenl. Ev. § 52. *Hilton* v. *Scarborough,* 5 Gray, 422. *Veazie* v. *Hosmer,* 11 Gray, 396. *Ingledew* v. *Northern Railroad Co.* 7 Gray, 87. *Shepard* v. *Ashley,* 10 Allen, 542, and cases cited. The fact that Fisher did not tell Clarke or Baker that he had the note had no tendency to show that it was not valid. He had no occasion to tell them. *Emerson* v. *Lowell Gas Light Co.* 5 Allen, 410. If evidence of Fisher's pecuniary condition was competent for the purpose offered, it could only have been competent coupled with evidence of Plimpton's ability to pay brought to his knowledge ; and such evidence was not offered. He, though in need of money, may have had many reasons, consistent with the validity of the claim, for not attempting to enforce payment; such as friendship for Plimpton, also in need of money ; fear of driving him into insolvency; or hope of collecting a larger amount by waiting longer.

*W. Gaston & W. S. Leland,* for the appellee.

BIGELOW, C. J. It is sometimes quite difficult to draw the line between evidence which is remote and immaterial, and that which may have a legitimate bearing, though slight, on the determination of the main fact which is to be settled by the verdict of a jury. This is especially true, when, as in the case at bar, an allegation of fraud forms one of the essential issues on which the rights of the parties depend, and when resort is had to a chain of circumstantial evidence in order to establish or disprove it. The competency of evidence in such cases often turns on the aspect in which the case presents itself to the mind of the judge in the course of a trial. This may vary from time to time as the evidence on one side or the other is put in, so that it becomes impossible after a protracted trial to present by a report or bill of exceptions the precise bearing which a particular fact or circumstance may seem to have had on the issue at the time it was offered in proof and admitted or rejected. Great injustice might be done therefore in this class of cases, if the party objecting to the ruling of the court and seeking to get rid of a verdict on the ground that evidence was improperly received or ruled out, was not held strictly to the observance of the rule of prac-

tice that the burden is upon him to show not only that the ruling was clearly erroneous, but also that it tended to operate to the injury and prejudice of his case in the minds of the jury.

On a careful consideration of the evidence to the admission of which exception was taken at the trial of the case at bar, we are of opinion that it was rightly admitted.

The claim which the plaintiff seeks to recover is a very stale one. It is alleged by him to have grown out of transactions which took place more than twenty years prior to the time of trial, and it is supported by a note bearing date nearly eighteen years previously. The suit is prosecuted against an administratrix; the immediate party to the note and to the alleged dealings, out of which the indebtedness is said to have arisen, is dead; and no steps appear to have been taken to enforce the claim during his lifetime. Under these circumstances, it is apparent that direct evidence in support of the defence would be unattainable, and that it would be necessary to rely mainly on circumstantial proof. Bearing in mind that the question before us is, not as to the value of the evidence or the weight which it ought to have, but solely as to its admissibility, we think that it was competent to show that the plaintiff, during the time he held the note in suit, was in embarrassed circumstances; that he was pressed for the payment of his own debts; that he did not disclose that he was the owner of the note, but represented himself as insolvent; and that his creditors compromised their claims against him by a deduction of fifty per cent. from their amount. These facts had some tendency to prove that the claim now in suit, which was then due and payable, was not deemed by him to be a valid debt against the intestate, who was then in business, possessed of attachable property, and for a part of the time at least in the habit of paying his debts as they fell due.

*Exceptions overruled.*