(Opinion published 52 N. W. Rep. 131.)

---

## James A. Smith et al. vs. John E. Glover.

Argued April 13, 1892.   Decided May 24, 1892.

**Former Decision Adhered to.**

> The decision of this case when here before (44 Minn. 260) upon the character of a certain contract, and upon the rights of the parties thereunder, and under an assignment by the parties of one part to plaintiffs, adhered to.

**A Power to Two Must be Exercised Jointly.**

> The contract gave to P. and P., parties of the first part, power to sell lands, in which all the parties were interested, to satisfy a joint charge or lien on the lands held by P. and P.; there being nothing in the contract to indicate that they might sell separately. *Held,* that they could execute the power only by joining in sales, and that separate sales by

them would pass only the interest in the land under the contract of each party selling.

## Accounting—Principles on Which it is to be Had.

The defendant acquired the interest of P. and P., who had held the legal title,—the plaintiff's interest being, in equity, an undivided half, all the interests°in the lands being subject to a charge or lien in favor of P. and P., which defendant also acquired; and he caused the lands to be conveyed to *bona fide* purchasers, so that the equitable interest of plaintiffs passed, or was extinguished. *Held* that, in an action by plaintiffs for an accounting, defendant is chargeable with one half the proceeds of such sales, after deducting from such proceeds the amount due on such charge or lien. *Held, also,* that it does not affect defendant's liability to plaintiffs that he shared such proceeds with another person, against whom they would have no recourse. *Held, also,* that in such accounting it is immaterial what defendant paid to acquire the interest of P. and P.

## Abandonment, how May be Proven.

On an issue that the plaintiffs abandoned the contract, and their rights under it, it is competent to prove, not only acts, omissions, and declarations tending to show an abandonment in fact, but in connection therewith, and to characterize such acts, omissions, and declarations, to show a reason or motive for abandonment, such as that, owing to low prices or values of the property involved, the venture and the rights under the contract appeared of no value.

New trial ordered on the issue of abandonment.

ON REARGUMENT.

Reargued June 27, 1892. Decided July 12, 1892.

## A Right not Perfected May be Lost by Abandonment.

An equitable right or title, not fully perfected as such,—thus, where it arises under a contract, and there remains something for the party to do under the contract in order to acquire, perfect, preserve, or be entitled to a remedy upon the right or title,—may be lost by abandonment.

Appeal by defendant, John E. Glover, from an order of the District Court of Ramsey county, *Kelly*, J., made December 10, 1891, denying his motion for a new trial.

The plaintiffs, James A. Smith and R. C. Libbey, commenced this action August 29, 1889. A demurrer to the complaint was over-

ruled, (44 Minn. 260,) and defendant answered and plaintiffs replied. The issues were tried April 9, 1891, before the Court without a jury. Findings were filed September 23, 1891, and judgment ordered for plaintiffs for $15,295.42. Defendant moved for a new trial November 7, 1891, on the ground that the decision was not justified by the evidence, was contrary to law, and for errors in law occurring at the trial and excepted to by him.

August 12, 1872, defendant John E. Glover and one John McClure made a contract with Herman L. Page and Nathan Pereles, by which Glover and McClure agreed to select and locate pine land in the northwestern part of Wisconsin to the value of $5,000 or more; and Page and Pereles agreed to enter and pay for it at the U. S. Land Office at Bayfield and take the title, hold it at least three years, pay the taxes on the land, and account. Glover and McClure agreed to repay one-half of the price and of the taxes with interest annually, at ten per cent. a year, and visit each forty acres of the land at least once a year, to detect trespasses if committed. When repaid by sales of land or stumpage, Page and Pereles were to convey one-half of the residue to Glover and McClure on demand. By paying one-half of the price, taxes and interest, from their own resources, Glover and McClure were entitled to a deed of their half of the lands at any time. It was agreed that the division of the land should be by lot. Under the contract 2,330.15 acres of land were located, and $5,825.37 paid for it.

Page and Pereles and their heirs and devisees while they held the land, paid taxes, $2,072.39, and for recording the patents, $11.25, and for examining the land in 1881, to detect and prevent trespass and spoliation of timber, $413. On September 30, 1872, McClure assigned to Glover all his interest under the contract. The defendant on August 11, 1874, assigned the contract and all his rights under it to plaintiffs.

Page and Pereles both died prior to 1882. The representatives of each, separately sold and conveyed, each a half interest in the land, to Alfred J. Goss, cashier of the Hudson Savings Bank, who paid therefor August 2, 1882, $18,813.34. He paid this sum in fact as a loan, to defendant Glover and one Phipps, who were jointly

the real purchasers. Goss took and held the title as security for the repayment of this money to the Savings Bank. Phipps had no notice of the contract with Page and Pereles, or of its assignment, or of the claims of plaintiffs. Goss, by direction of Glover and Phipps, sold off the land from time to time, to parties who bought in good faith and without notice. He realized therefor $35,575. After repaying the Savings Bank, the residue was paid over to defendant and Phipps. Plaintiffs did not discover the facts until February, 1889. They never paid any part of the purchase price of the land under the contract with Page and Pereles, or any interest on it, nor any part of the taxes; nor did McClure, or defendant, visit the land as required, but the land was not in fact trespassed upon.

In October, 1874, the plaintiff Smith went to Milwaukee, Wis., and there saw Pereles, and offered to pay him one-half of all the money, principal and interest, which he and Page had invested under the contract, on condition that Pereles cause to be conveyed to plaintiffs, an undivided half interest in the lands. Pereles declined the offer. It was renewed several times in September and October, 1875, but was as often refused. Page was then dead, and Pereles was executor of his will, with power to convey, and was then informed of plaintiffs' rights, but never demanded performance by them, of the contract, nor did he ever repudiate it.

The District Judge in a memorandum attached to his findings said: Plaintiffs were entitled in September, 1875, upon making payment, to a division of the lands. The conveyance of an undivided one-half would not have precluded a division, under the terms of the contract. It was not unreasonable that plaintiffs should demand something more than a mere acknowledgment, for their money. Having made a fair offer, and being able and willing to keep it good, they would not be in default until Page and Pereles made upon them some demand. None was ever made.

*Warner, Richardson & Lawrence,* and *Lusk, Bunn & Hadley,* for appellant.

The investment of Page and Pereles with taxes and interest to November 13, 1882, is found by the Court to have been $15,504.22.

They sold for $18,813.34, realizing a surplus of something over $3,000 above their investment. If they had the right to make this sale, that is an end of this case, for the plaintiffs' remedy is against them; and the recovery would be about $1,500, instead of the monstrous recovery in this suit of over $15,000. The plaintiffs neither paid a cent to Page and Pereles, as they had agreed, nor did they ever examine the lands to see if they were trespassed upon.

The silence and inaction of the plaintiffs for nearly eight years is conclusive that they abandoned their contract, or what comes to much the same thing, lost the right to appeal to equity to aid them in enforcing it. The case must be distinguished from those where the purchaser has gone into possession and made improvements, or where he has made considerable payments on the purchase money. The plaintiffs lay by, declining to be bound themselves by the contract, or to perform any part of it; letting Page and Pereles take the whole risk while the venture seemed to be a losing one. They cannot afterward when the land has risen in value owing to construction of railroads, improvement of logging streams, and a rise in the lumber market, come into equity to collect the profits of the venture. *Brashier* v. *Gratz*, 6 Wheat. 529; *Bacon* v. *Hennessey*, 35 Fed. Rep. 174; *Sparhawk* v. *Yerkes*, 142 U. S. 1; *Sullivan* v. *Portland, etc., R. Co.*, 94 U. S. 806; *Marsh* v. *Whitmore*, 21 Wall. 178; *Landsdale* v. *Smith*, 106 U. S. 391.

### ON REARGUMENT.

Calling the Page and Pereles' right to sell, a power, is we suggest, misleading. The plain fact is, that Page and Pereles had whatever right to sell, the contract gave them, and no other. This right, we contend, was a right to sell as owners, not under a power, conferring dominion over the lands of others. After reading Sugden and many cases searching for light on this point, we are unable to find any book or case, in which this sort of a right to sell, is treated as a power. There is no technical rule that both vendors must join in the same deed or instrument. All that is essential is, that both concur in the sale. If there was but one sale, the price was as good as if both vendors signed the same deed. There was really but one sale, con-

curred in by all the vendors, and but one purchase. Glover did not buy, and certainly would not have bought, an undivided interest in the lands. The contract was, in important particulars, executory. It was no more executed than an ordinary land contract would be, where the vendee has made a part payment, and has further payments still to make. This kind of a right may be lost by abandonment. Any right of an equitable nature, where the party claiming, has not the legal title, can be lost by abandonment. It may also be lost by laches and delay. Abandonment implies a deliberate intention to give up or surrender the right held. The cases show that the doctrine of laches and abandonment, is applied with the greatest rigor to cases where the plaintiff has broken his contract, so that by the strict rules of the common law, defendant might say to him, you broke the contract first. *Norway* v. *Rowe,* 19 Ves. 144; *Senhouse* v. *Christian,* 19 Beav. 356, n.; *Prendergast* v. *Turton,* 1 You. & Coll. Ch. 98.

The case of *Clarke* v. *Hart,* 6 H. L. C. 633, sometimes cited as opposed, is fully reconciled by Mr. Lindley to the general doctrine on the ground that the plaintiff in that case had the legal title, and the Court was forced, either to give him the relief he prayed, or hold that his laches would charge him, the legal owner, as trustee for the defendant. 2 Lindley, Partn. 473–475. The doctrine is nowhere better stated than by this Court in the case of *M'Dermid* v. *M'Gregor,* 21 Minn. 115; *Holingren* v. *Piete,* 50 Minn. *ante; Colby* v. *Gadsden,* 34 Beav. 418.

If Libbey told Glover before his purchase that he made no claim to the land and abandoned his interest, Glover had a right to buy relying on those statements, and the case is one of plain estoppel, and would be even if Smith and Libbey held a legal title. *Dickerson* v. *Colgrove,* 100 U. S. 578; *Pence* v. *Arbuckle,* 22 Minn. 417. The settled rule of this Court is, that an estoppel *in pais* need not be pleaded, to make it available as a defense. *Coleman* v. *Pearce,* 26 Minn. 123.

*Stringer & Seymour,* and *John M. Gilman,* for respondents.

*Smith et al.* v. *Glover,* 44 Minn. 260, decided all the questions discussed by appellant's counsel. The case stands before the Court

precisely as it did when here in 1890, except that it appears that Glover's motive, in causing the lands described in the Page and Pereles contract to be deeded to Goss, was not to conceal the transaction, but to give Goss collateral security for the moneys advanced; and that Glover had Phipps as a secret partner in his enterprise. These considerations have no bearing upon the liability of Glover. The title to the property purchased, was taken in the name of Page and Pereles. But the interest of Glover and McClure was held by Page and Pereles as security, for payment to them of one-half the cost of the land. The Glover and McClure interest in the lands was held as security and for nothing else. The entire transaction was a mortgage. *Fisk* v. *Stewart*, 24 Minn. 97; *Holton* v. *Meighen*, 15 Minn. 69, (Gil. 50;) *King* v. *Remington*, 36 Minn. 15; *Marshall* v. *Thompson*, 39 Minn. 137.

The agreement was in the nature of a partnership, if it did not actually make the parties thereto, copartners. *Stern* v. *Harris*, 40 Minn. 209; *Newell* v. *Cochran*, 41 Minn. 374.

Page and Pereles in their lifetime might have sold this property under a supposed power of sale, in the manner prescribed by law. But this power was not of such a character as our statute requires for foreclosure by advertisement. It did not authorize a private sale so as to cut off the right of redemption, except to a *bona fide* purchaser, in which case Page and Pereles would have been accountable for the value of the property. *Lawrence* v. *Farmers' Loan & Trust Co.*, 13 N. Y. 200.

Page and Pereles had no right to sell the real estate at private sale, but only by a suit in equity. The legal representatives of Page and Pereles could by their deed convey no other interest in the property than that expressed in the contract, and their deed would amount to an assignment of their interest and nothing more. They also might have foreclosed by action. Glover then, as decided by this Court in 1890, stands in the shoes of Page and Pereles. If the power of sale actually existed it was given to Page and Pereles jointly. It was to be exercised by both jointly, if it was exercised at all.

On the former appeal the following propositions are established: 1st. Glover and McClure had an equitable interest in the land itself. 2nd. By the assignment to plaintiffs, the latter sustained the same relation to the lands as Glover and McClure had sustained. 3rd. When Glover purchased the interest from the representatives of Page and Pereles, he had knowledge of the equitable interest of the plaintiffs, and stood in the same relation to the lands and the plaintiffs, as Page and Pereles stood; that is, the relation of a trustee of an express trust. 4th. By selling the lands to *bona fide* purchasers Glover violated his trust, and became liable to the plaintiffs for the value of their interest in the property as realized by him upon such sale; under the principle laid down in the case of *Scott* v. *Reed,* 33 Minn. 341. 5th. The plaintiffs are not barred of their right to recover by the statute of limitation, nor by laches. The statute would not run in favor of a trustee of an express trust, until the trust relation was repudiated. The plaintiffs did not discover the fraud which had been practiced upon them by the defendant until 1889. The defendant was a nonresident of the state. When the case came back into the District Court the defendant interposed an answer, setting up as a defense, that the plaintiffs had waived and abandoned their rights under the contract. The plaintiffs are not estopped from asserting their rights under the contract as against Glover, unless he shows that they stated or represented to him that they had abandoned their interest under the contract, and that such statement was made knowing that he was to act on the faith of it, and that he did act thereon, in making the purchase. *Sutton* v. *Wood,* 27 Minn. 362; Bigelow, Estoppel, 576; *Combs* v. *Cooper,* 5 Minn. 254, (Gil. 200;) *Whitacre* v. *Culver,* 8 Minn. 133, (Gil. 103.)

### ON REARGUMENT.

A party may divest himself of an easement, or of his rights in an executory contract, or of inchoate rights, or of incorporeal hereditaments, or of a mere equity, by abandonment. But a vested interest or title in realty cannot be so divested. 3 Washburn, Real Prop. 67, (5th Ed.;) Tiedman, Real Prop. § 739.

One having a vested title cannot divest himself of his rights by
v.50M.—5

parol abandonment or relinquishment.   *Inhabitants of School District No. 4* v. *Benson*, 31 Maine, 381; *Mayor, etc.,* v. *Riddle*, 25 Pa. St. 259; *Parker* v. *Barker*, 2 Met. 423.

Page and Pereles held the title to the interest of Glover and McClure in the property, with a power in trust merely as security, and in the nature of a mortgage.   Glover and McClure stood in the same relation to the undivided half of the lands, as they would to the whole, if the purchase had been made solely for themselves, and they had borrowed the money from Page and Pereles to pay for the lands, and had had the lands conveyed to Page and Pereles, as security for the money borrowed.   In such case their interest would be more than a mere equity.   They would be the absolute owners, subject only to the mortgage or lien.   That was the position of Glover and McClure in respect to an undivided half interest in the lands in question, and was the position of the plaintiffs as assignees of Glover and McClure.   The fact that the land was conveyed directly to the party advancing or loaning the money, instead of passing through the actual purchaser, does not change the relation of the parties from that of mortgagor and mortgagee, if it was so conveyed as security.   *Niggeler* v. *Maurin*, 34 Minn. 118; *Fisk* v. *Stewart*, 24 Minn. 97; *Jones* v. *Blake*, 33 Minn. 362; *Brinkman* v. *Jones*, 44 Wis. 498; *Magoon* v. *Callahan*, 39 Wis. 141; *Sage* v. *McLaughlin*, 34 Wis. 550.

No case can be found where it has been held that a party has lost his rights under a contract by mere abandonment, and still remains liable upon the contract.   Wherever rights have been lost by mere abandonment, no claim can continue against the party, upon the agreement relating to the subject-matter.   The very fact that the plaintiffs are still liable upon the contract, necessarily implies that the contract is still in force, and that the plaintiffs have rights under it.   It cannot be in force in favor of one party, and a nullity as to the other party.   The plaintiffs of their own motion could not annul the contract, and therefore could not by mere abandonment divest themselves of their rights without consideration.   *Hart* v. *Stickney*, 41 Wis. 630.

GILFILLAN, C. J.    This case was here before on an appeal from an order overruling a demurrer to the amended complaint, and the order was affirmed.    44 Minn. 260, (46 N. W. Rep. 406.)    That decision must be taken to have established these propositions: *First.* Under the contract between Page and Pereles, of the first part, and Glover and McClure, of the second part, the latter parties had an equitable interest in the lands.    *Second.* Plaintiffs succeeded to the rights of Glover and McClure.    *Third.* When Glover purchased from the representatives of Page and Pereles, causing the conveyances to be made to Goss, the legal title passed, subject to the rights of plaintiffs; and when he caused Goss to convey to *bona fide* purchasers, who took the lands discharged of plaintiffs' interests, he incurred the same liability to them which Page and Pereles would have incurred, had they made similar conveyances to *bona fide* purchasers,—that is, the liability to account to plaintiffs for one half the proceeds of the sales. *Fourth.* The failure of McClure to visit the lands each year did not extinguish the rights of Glover and McClure.    *Fifth.* Plaintiffs' action is not barred by the statute of limitation.    *Sixth.* Plaintiffs have not lost their right to relief by laches, so far as the same appears by the amended complaint.    These propositions cover nearly the whole case, as now presented.

It is unnecessary to reconsider any of them.

To determine the extent of the interest of Glover and McClure, and the conditions under which they held it, and how the land might be sold by Page and Pereles, we will consider some of the features of the contract.    It declares its purpose to be "entering into the business of entering and selling pine timber lands."    It is beyond question that the lands were to be entered on behalf, and for the interest, of all the parties to it, though the titles were to be taken in the names of Page and Pereles.    Towards acquiring the lands, Glover and McClure were to contribute, and they did contribute, their time, labor, and skill in selecting and locating them; and Page and Pereles were to enter and advance the money to pay for them, and they did so enter and advance the money.    After they were acquired, Page and Pereles were to pay the taxes on them, and hold them "until such time, not exceeding three years, as may seem advisable to all

parties concerned." On September 1st in each year, Glover and Mc-Clure were to pay Page and Pereles interest at the rate of ten per cent. per annum on one-half the money invested by them "as long as the same remains invested." There is no express stipulation that Glover and McClure should at any time repay to Page and Pereles any part of the principal sums disbursed by them. There are stipulations that, after enough lands have been sold to repay those disbursements and interest, Page and Pereles shall convey an undivided half of the lands remaining to Glover and McClure, and that Page and Pereles shall convey none of the lands within three years from the entry without the consent of the other parties, and then only enough to repay such disbursements and interest, and that at the expiration of said time, (three years,) if the parties cannot agree to sell or hold said lands, then the same shall be divided by lot, and Page and Pereles shall convey to Glover and McClure the land falling to them by said lot, in fee. No mention is made of sales after the three years, except as the parties may then agree to sell. When that time has expired, whether they shall hold or sell the lands is to be determined by agreement of the parties then to be made; and, upon failure to make such agreement, they are to be divided by lot.

When, pursuant to a valid agreement, parties purchase property for their common benefit, the legal title to be taken in the name of one of them, they are all, in equity, owners of the property; and, unless their agreement otherwise provide, they are to be regarded as equal owners, just as in case of a partnership the partners are deemed equal partners unless their partnership articles otherwise provide. In such cases the holder of the legal title holds it in trust, and if, under the agreement, he has a power to sell, that power is a power in trust for the purposes contemplated by the agreement. As these lands were acquired for the benefit of all the parties to the contract, they were all, in equity, owners of the lands so acquired, and, unless otherwise provided in the contract, they were equal owners; that is, the parties of the first part owned an undivided half, and the parties of the second part the other undivided half. There is nothing in the contract to indicate that the parties were to be interested in any different proportions. It clearly indicates that they

were to be equal owners, subject to a charge or lien in behalf of Page and Pereles. This must be kept in view, in construing the different provisions of the contract, especially those in regard to sales, and in determining the rights of the parties thereunder.

In respect to the right or power of Page and Pereles to make sales the defendant makes these propositions: That their power to sell was derived, not from the contract, but from the patents to them,— that is, from their legal ownership; that when the absolute owner of property enters into a contract with another, giving him rights in the property, and containing provisions in respect to sales to be made by the owner, those provisions are not a grant of power, but are limitations or restrictions upon an absolute power already existing; and that Page and Pereles having been the absolute owners, and having had an absolute power to sell, they could exercise it, except in so far as it was limited or restricted by the contract. The error in applying the general proposition thus stated to this case arises from assuming that Page and Pereles were the absolute owners, with an absolute power to sell, dependent on such ownership. They never were, in equity, the absolute owners. Simultaneously with the vesting of the legal title in them, Glover and McClure's equitable title vested. Therefore they never had an absolute power to sell, or any power to sell, so as to pass the equitable title to Glover and McClure, except such as the contract conferred on them; and that, so far, at any rate, as it might affect that equitable title, was a power in trust. And here it may be noted that the contract does not expressly give any power to sell, except with the consent of Glover and McClure, and within three years, and for the purpose of making the disbursements of Page and Pereles out of the lands to be sold. Defendant claims that from the restriction that sales during the three years shall be made only by consent of Glover and McClure a power to sell after that time, without such consent, is to be implied. In view of the provisions as to what shall be done at the end of the three years, that implication could be made only because the contract gives Page and Pereles a lien for their disbursements and interests, and the power of sale, so far as given, was to enable them to enforce the lien, and that it would be unreasonable to suppose the

parties intended the power to expire before the lien should be satisfied. The question is a very close one, but we shall assume that the power survived so long as the disbursements and interests had not been made out of the lands.

Question is made as to the character of the relations between the parties, which the contract created,—whether that of mortgagors and mortgagees, or of partners, or of vendors and vendees in a contract for the conveyance of real estate. The fact and the extent of the equitable interest of Glover and McClure appearing, it does not matter, so far as concerns this case, how the relations between the parties shall be designated. The main purpose of the contract was the acquisition of the lands for the common benefit of all the parties. But Page and Pereles were to advance all the money necessary to purchase the lands, and for their security they were to take and hold the legal title. That they were to take and hold it solely as security is indisputable from the provision that, as soon as enough lands should be sold to repay the disbursements and interest, they should convey an undivided half of the remaining lands to Glover and McClure. That condition might arise at any time, even immediately after the lands were acquired.

The contract certainly contemplated private sales, and we shall assume that, if they were otherwise such as the contract contemplated, the sales by the representatives of Page and Pereles to defendant were effectual to pass the plaintiffs' interest in the lands. We will assume that the power of sale, though in trust, would on the deaths of Page and Pereles pass to their heirs, and even assume that a power given by one of them in his will to his executor to sell and convey his real estate would enable the executor to join in executing the power contained in this contract. Whoever (if any one) after the deaths of Page and Pereles might execute the power, he or they would have to do it just as would have been required of Page and Pereles had they attempted to execute it. The contract certainly does not contemplate any but sales such as would be most for the interest of all the parties to it, such as would pass the entire estate—all the interests of all the parties—in each tract sold. The claim of Page and Pereles, to satisfy which, sales might be made, was a joint claim. They

were joint trustees, and to execute the power they would have to join in any sale. It cannot be inferred that, under the power, Page might sell an undivided half to one person at one time, and Pereles might sell the other undivided half to another person at another time. It can hardly be questioned that such separate sales would not be so advantageous to the parties interested—would not be likely to produce so much—as sales passing each by itself the entire interest in the land sold. Of course, each party to the contract might sell his own interest in the lands. Page and Pereles might each sell without reference to the power in the contract,—might sell merely his own interest. The difference between such sales and one made under the power would be that the latter would pass all the interest of all the parties, even to a purchaser with notice, while the former would pass to a purchaser with notice only the interest of the party selling. The sales by the representatives of Page and Pereles to defendant were of such a character. They were not made under or with reference to the power. They were separate sales. Separate deeds were executed at different times for different considerations, and apparently, at least, as the result of separate and independent negotiations. By each deed the grantors did "remise, release, and quitclaim" an undivided half of the lands; from which it is apparent that each set of grantors assumed to sell only the interest of the estate which they represented. They could not by separate sales sell any other interest. The defendant acquired, therefore, by those sales, as decided when the case was here before, only the legal title, subject to the equitable interests of the plaintiffs.

Much evidence was offered at the trial, and rejected, tending to prove a proper reason for selling the lands *en masse*. Had the objection to the sales been merely that they were *en masse* instead of in separate parcels, the evidence would have been proper; but it would have no tendency to show that there was a joint and so a valid sale, and it could not have changed the result.

The defendant alleges as a defense that in consequence of business depression between 1874 and 1880, and owing to the fact that there was during said period no margin of profit, but an actual net loss, in said venture, the plaintiffs actually abandoned their interest un-

der said contract, and wrongfully neglected and refused to do anything called for by or on their part, notwithstanding performance by them was often duly demanded, and also that during such period the plaintiffs from time to time represented to defendant that they had abandoned their rights, and did not intend to have anything more to do with, or to do anything more under, said contract. What plaintiffs may have said to defendant on the subject constitutes no defense unless an estoppel can be based on it, and sufficient facts to make an estoppel are not pleaded. However, the court below seems to have admitted whatever evidence was offered of such representations, and also admitted whatever evidence was offered of acts or declarations of plaintiffs indicating abandonment of their rights, and finds as a fact that there was no abandonment.

The evidence offered of the financial depression and the condition of the market for such lands between 1874 and 1880 would, of itself, be no evidence of abandonment. The most that could be claimed for it would be that, as showing a condition that might have induced the parties to abandon, it was admissible for the purpose of giving character to evidence introduced, directly tending to show abandonment in fact. Even for that purpose, it would be somewhat remote.

But as in such a case the question of abandonment is one of the intent with which acts are done or omitted, or declarations made, we think it was proper to show, in connection with acts, omissions, or declarations indicating an abandonment in fact, a motive or reason for abandoning, such as that the rights claimed to have been abandoned were of no value. We think, therefore, that the evidence offered ought to have been admitted.

It appears that under some arrangement between defendant and one Phipps the profits upon a resale of the lands were divided between them, and it is therefore claimed that in this action, which is for an accounting, defendant ought not to be charged with the share of the profits received by Phipps. If defendant, having notice of plaintiffs' interest in the land, caused that interest to be transferred by causing Goss to convey to bona fide purchasers, he is chargeable with whatever may be deemed to have been received for it, to wit, one-half the proceeds of such sales, after deducting the claim that

Page and Pereles had upon the land; and it is immaterial what he did with such proceeds,—whether he appropriated them himself, or turned them over to some other person. On the proposition made by defendant, had he turned over all the proceeds to Phipps, then, as plaintiffs could have no recourse against the latter, because he had no notice of their interest, they would be entirely remediless.

It is also claimed that in the accounting the court ought to have credited defendant with the considerations he paid to the representatives of Page and Pereles, instead of the amount of the disbursements of those parties, with interest. The most that defendant can insist on, he having bought with notice of plaintiffs' interest, is that he succeeded to the interest of Page and Pereles, to wit, an undivided half of the land, and a charge upon the whole for their disbursements and interest. What he paid for the interest of those parties would neither add to nor diminish the amount of that charge, and in no way affected the rights of these plaintiffs.

As we have seen, there was error in excluding evidence offered on the issue of abandonment. As to all the other issues the cause was properly tried and decided. As the issue of abandonment is independent of the other issues in the case, and may be adequately tried without reference to such other issues, we order a new trial as to that issue only; and if, on such trial, it shall be found that plaintiffs did abandon their rights under the contract, then the court below will render judgment for the defendant; but, if it be found that they did not abandon such rights, then it will cause judgment to be entered for the plaintiffs as by it directed on the trial already had.

(Opinion published 52 N. W. Rep. 210.)

---

## ON REHEARING.

GILFILLAN, C. J. Upon the first argument of the case on this appeal the court ordered a new trial upon the issue tendered by the answer,—that plaintiffs had abandoned their rights under the contract. The proposition that they could lose those rights by abandonment

.was, of course, included in that issue, or was implied by it, but it was not distinctly presented as a proposition of law, so that the attention of the respondents was necessarily called to it, so that they saw the necessity of discussing it. Upon their application, therefore, a reargument of the proposition was ordered; and when the parties appeared before the court to have a time set for the reargument, upon the suggestion of appellant that the court had misapprehended the facts in regard to the conveyances made to Goss by the representatives of Page and Pereles, as to whether they were made on a joint sale or on separate sales, a reargument of that matter was also allowed.

Upon the reargument we find the facts in regard to the character of the sales, whether joint or separate, to be just as stated in the original opinion. They are stated in the complaint as separate transactions by separate conveyances, at different times, for different considerations. The answer does not make any issue upon it, nor allege that, while they were separate conveyances, they were made to carry out one sale, one transaction, to which the representatives of both Page and Pereles were parties on one side and Glover the party on the other. The court below found the facts just as they are alleged in the complaint, and, if the question was an open one on the trial, there was nothing in the evidence requiring a different finding.

The matter of abandonment, as applied to rights or the title to property, is different from estoppel or adverse possession. The latter two are modes by which titles may be passed from one to another; the former is a means by which rights or titles may be lost or extinguished, but not passed, so that thereby one can acquire a right or title. It is therefore laid down that there can be no such thing as abandoning to a particular person. It is also different from the equitable rule denying a remedy because of laches, though it resembles it in some particular; for in the matter of laches lapse of time is usually the controlling consideration, and an intent to lose the remedy is not material, but where a right or title may be lost by abandonment, time, though it may be sometimes important in determining the intent, is not an essential element. There is no

question that title to chattels in possession may be lost by abandonment, as, if one throw away a chattel with intent to relinquish his right to it, in which case whoever finds it may appropriate it as his own. And, although there are some *dicta* to the contrary, there is but little question that a vested legal title to real estate cannot be so lost. Easements in land, especially for ways and for light and air, may be so lost. It has often been said without qualification that equitable rights may be abandoned. Thus, in *Mayor, etc.,* v. *Riddle,* 25 Pa. St. 259: "Inchoate rights may be abandoned, but abandonment is hardly predicable of a perfect title." (This referred to a legal title.) In *Picket* v. *Dowdall,* 2 Wash. (Va.) 106: "Legal rights, once vested, must be legally divested, but equitable rights may be lost by abandonment." In *Dikes* v. *Miller,* 24 Tex. 417: "Easements and incorporeal rights annexed to land may be lost by abandonment. So may an incipient right to land,—as a location and survey, or other merely equitable title, not perfected into a grant or vested by deed." So it was held of a right, not perfect, but only the inception of a title, which might be rendered perfect by future proceedings. *Philips* v. *Shaffer,* 5 Serg. & R. 215.

We are not prepared to assent to the proposition that an equitable title, perfected, so that nothing remains for the party to do,—where, for instance, it exists under a contract, and he has fully performed on his part, as where a vendee in a contract to convey land has paid the full price, and done all required of him to be entitled to a conveyance,—may be lost by abandonment, though the party may lose his remedy by *laches,* or under the statute of limitations. It is unnecessary to go further in this case than to hold that, where the equitable right or title is not fully perfected, as where it accrues under a contract, and there remains something for the party to do under the contract in order to acquire, perfect, preserve, or be entitled to a remedy upon it, he may abandon it. He may abandon his purpose to do what is required under the contract,—his purpose to acquire, perfect, preserve, or to become entitled to a remedy upon the right; and it would seem that, if he do that, he must be held to relinquish all right under the contract. The most frequent in-

stances of such abandonment are under contracts to convey real estate. Under such a contract the vendee certainly, if he has paid part of the purchase price, has an equitable title to a greater or less extent in the land.

This court, in a case where but part of the price had been paid, said (perhaps too broadly) that in equity the land belonged to the vendee, and the vendor had only a lien for the unpaid part of the price. *Chemedlin* v. *Prince*, 15 Minn. 331, (Gil. 263.) Notwithstanding the vendee has an equitable title in the land, it is beyond dispute that, while anything remains to be done by him under the contract, he may lose his rights by abandonment. See citations in note on page 537 of Fry on Specific Performance.

Under the contract in this case plaintiffs had an equitable title in the lands. But that title could not be enforced, so as to become a legal title, (a perfect title,) so long as Page's and Pereles' disbursements were not satisfied; and until that time, by the terms of the contract, Glover and McClure, under whom plaintiffs claim, were to pay interest annually on one half the disbursements, and McClure was annually to visit each forty-acre tract, to ascertain if the same was trespassed upon, and Glover and McClure were to protect the lands from trespassers. That the contract has some of the features of a mortgage,— that it may be assumed that Page and Pereles were to hold the legal title to Glover and McClure's one-half as security for the disbursements and interest,—does not change this feature, nor enlarge the rights, nor lessen the duties of Glover and McClure. Nor is it any objection to the proposition that plaintiffs might lose their rights by abandonment, that Page and Pereles would not be bound by it, that they might still enforce the obligations of Glover and McClure or of the plaintiffs. Of course, Page and Pereles could not treat the contract as abandoned by plaintiffs, and at the same time enforce its obligations. But they might elect which they would do.

We are therefore of opinion that plaintiffs' rights under the contract might be lost by abandonment.

As to how the fact of abandonment may be proved on a retrial of

the issue, we will say that we see no reason why it may not be shown by estoppel. There is no reason why plaintiffs may not have estopped themselves to deny the fact.

The order directing a retrial of the issue of abandonment must stand.

(Opinion published 52 N. W. Rep. 912.)