# GEORGE S. CHRYSLER v. RANDOLPH SAND & GRAVEL COMPANY.[1]

April 27, 1923.

No. 23,383.

**Contract of employment of fixed salary.**

1. The evidence is sufficient to sustain a finding that, in a negotiation between plaintiff and defendant, the minds of the parties met in a contract, by which plaintiff was employed to work for defendant, for the season of 1921, at a fixed salary.

**President of corporation had authority to make contract.**

2. The evidence is also sufficient to sustain a finding that defendant's president had both implied and apparent authority to bind defendant by such a contract. The existence of plenary authority in an officer may be implied from the fact that he has been accustomed to exercise such authority with the assent and acquiescence of the stockholders.

**Breach of executory contract carries liability.**

3. Withdrawal by one party from an executory contract, without consent of the other, is a breach which entails liability in damages.

**Court has discretion to bar evidence of collateral facts.**

4. The admission of evidence of collateral facts rests largely in the discretion of the trial court. Refusal to receive evidence that other business transactions were recorded in corporate minutes, while this transaction was not, was not error.

**Measure of damages.**

5. Plaintiff was entitled to recover, if at all, the amount of the contract price of his services, less the amount he was able to earn elsewhere.

Action in the district court for Ramsey county to recover $2,600 for services as superintendent of defendant's gravel pit. The case was tried before Haupt, J., who when plaintiff rested denied defend-

[1] Reported in 193 N. W. 677.

ant's motion to dismiss the action and at the close of the evidence denied its motion for a directed verdict, and a jury which returned a verdict for $2,699.67. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Harris Richardson*, for appellant.

*C. C. McElwee*, for respondent.

HALLAM, J.

Defendant was organized as a corporation in 1917, with its principal place of business in St. Paul. It operated a sand and gravel pit at Randolph, Minnesota. Dr. F. D. Kendrick was its president and Dennis H. Bradley its secretary and treasurer. Dr. Kendrick had lived many years in St. Paul, and he and his wife owned considerable property there. Bradley had been associated with the business of Dr. and Mrs. Kendrick for many years, and had charge of some of their buildings. For a number of years, plaintiff was chief engineer in one of Dr. Kendrick's buildings in St. Paul. He left and went to Bellfield, North Dakota. On negotiations initiated by Bradley, plaintiff came to St. Paul in the spring of 1920 and entered the employ of defendant as foreman and electrician and engineer at its sand and gravel pit at a salary of $300 a month. The season closed in November until the following spring. In November plaintiff returned to North Dakota. Before doing so, he had some negotiations with Dr. Kendrick and Bradley as to the year 1921. Plaintiff claims that a contract was made, by which he was hired as superintendent of the pit for the operating season of 1921, to commence February 15, 1921, at $3,000 for the season, with an added amount contingent on output, and that defendant broke the contract. He asks judgment for the stipulated sum of $3,000, less $400 which he was able to earn elsewhere. Defendant denies the contract. The jury found for plaintiff and defendant appeals.

1. Defendant contends that the minds of the parties never met in a contract. The evidence is that Dr. Kendrick and Bradley "talked over about making arrangements" with plaintiff for 1921, and that Bradley then talked with plaintiff over a period of two or three days.

It is undisputed that Bradley and plaintiff agreed between themselves upon terms as claimed, and then went to the doctor and "put the proposition up to him."

Plaintiff testified that Dr. Kendrick, when the proposition was put up to him, said "that was perfectly satisfactory," but objected to giving a contract in writing because it might interfere with his selling the plant and that Bradley said:

" 'Well, I don't think, if you got a buyer for this plant between now and the time of the 15th of February, when you are to report here, I don't think that George would object to you selling the plant, and he wouldn't stand in the way of you making a sale if that stood in the way.' And I told him, no, I wouldn't."

Bradley testified:

"Well, I outlined the proposition myself, and the Doctor said 'That's all right.' He said, 'Now, I am liable to sell this plant, and I don't want to make any written agreement.' Well, George—Mr. Chrysler—says, 'Well now, I don't want—I have got to hire a man for the season up there, and I have got to put a man in my place to run my plant up at Bellfield.' And we hung on that for a little while, and 'Well,' said I, 'Now, George, if we should sell the plant and the people did'nt want you, you wouldn't go to work, because Dr. Kendrick wanted to sell the plant pretty bad, you wouldn't go to work and stand in the light of a sale if those people didn't want you?' And George said, 'No, if the sale is made I won't hold you to the agreement.' "

Dr. Kendrick testified:

"He wanted a written contract." I says, "I will make you no contract. But if I don't make some disposition of this proposition to get out from under it, this management, why I will want you if I have to manage it."

We think the evidence is such that the jury might find that there was a meeting of the minds.

2. Defendant contends that Dr. Kendrick had no authority to make this contract. It was incumbent on plaintiff to prove that Dr.

Kendrick had express, implied or apparent authority to make this contract. Dispatch Printing Co. v. National Bank of Commerce, 109 Minn. 440, 124 N. W. 236, 50 L. R. A. (N. S.) 74; Bloomingdale v. Cushman, 134 Minn. 445, 159 N. W. 1078. There was no proof of express authority. The articles of incorporation provide that the government of the corporation and the management of its affairs shall be vested in the board of directors composed of three persons. The board of directors never acted upon this contract. The president of a corporation has no inherent power to make such a contract. See Grant v. Duluth, M. & N. Ry. Co. 66 Minn. 349, 69 N. W. 23. But we think there was ample evidence from which authority might be implied. In Gross Iron Ore Co. v. Paulle, 132 Minn. 160, 156 N. W. 268, this court held that the existence of plenary authority in an officer may be implied from the fact that he has been accustomed to exercise such authority with the assent and acquiescence of the stockholders, and a mortgage, given by the president and secretary upon land of the corporation, was sustained.

The evidence in this case is such as to sustain a finding that Dr. Kendrick was in the exercise of practical control of the operation of the corporation. When plaintiff entered the employ in 1920, Bradley initiated the negotiation and Bradley and Dr. Kendrick concluded it. Dr. Kendrick testified that the directors made the contract, but he added: "Well, of course it was under my control with reference to the proposition, sure. We talked it over—the company, the directors, as to what we wanted to do." No claim is made that there was any formal action of the board. We think it a fair inference from the testimony that there was no such action. The Doctor's testimony makes it clear that upon his shoulders rested the entire responsibility for the management of the corporation. He declared he told plaintiff: "I cannot stand it to manage this thing any longer and I am going to dispose of it if I have to give it away. I have got to get out from under this because I can't stand the pressure, * * * I can't stand it and I have got to get out."

There were three directors. Apparently Dr. Kendrick and Bradley were two of them. From evidence offered by defendant and the

rejection of which defendant contends was error, it would appear that the third director on February 3, 1921, was C. J. Kutil, the husband of Dr. Kendrick's foster daughter, and that in February, 1921, Dr. Kendrick, Mrs. Kendrick and Bradley were elected directors. We think it may be inferred from the evidence that Dr. Kendrick was recognized by the corporation as having sufficient authority to make such a contract as this; in other words, that his implied authority was established. We think too that the facts above narrated are sufficient to sustain a finding that Dr. Kendrick was clothed by the corporation with apparent authority to make a contract such as plaintiff claims was made.

3. The contention that "either party may withdraw from an executory contract" cannot be sustained. Withdrawal from an executory contract, without consent of the other party, is plainly a breach which renders the party withdrawing liable in damages. It seems unnecessary to say that a contract, by which one party hires, and the other agrees to work, for a fixed term, contains such mutuality of promise as will constitute a consideration to sustain the agreement of each.

4. Defendant offered in evidence the minutes of a meeting held on November 18, 1920, the same day plaintiff claims to have been hired. The offer was rejected. The minutes purport to be minutes of a meeting of the "officers" of the company. It does not appear who were present. Kendrick and Bradley, the executive officers of the company, both participated in the negotiations with plaintiff. Whether this occurred before or after the formal meeting does not appear. It is conceded that no formal record was made of plaintiff's transaction. That a record was made of some other corporate transaction and not of plaintiff's alleged contract, might furnish some ground for argument that no contract was made with plaintiff. It could also be argued that these officers deemed it no more necessary to make a record of plaintiff's employment for 1921 than of the employment for 1920. The evidence offered was evidence of a collateral fact and the admission of such evidence rests largely in the discretion of the court and we think there is here no reversible error. See Philips v. Mo, 91 Minn. 311, 97 N. W. 969; Peters v. Schultz, 107

Minn. 29, 32, 119 N. W. 385; Wentworth v. Butler, 134 Minn. 382, 159 N. W. 828; Bartlett v. Ryan, 141 Minn. 76, 169 N. W. 421. Evidence of minutes of transactions at meetings held several months later is still more remote and its rejection was not error.

5. Defendant contends that the damages are excessive. If plaintiff was entitled to recover at all, he might recover the contract price of his services, less the amount he was able to earn elsewhere. Plaintiff testified that, after giving up hope of securing employment from plaintiff, he went home and worked in a light and power plant in which he was interested; that he had already hired a man to take care of his business and that he made only about $400. There is no other evidence on this subject. On this evidence the jury was warranted in rendering a verdict for plaintiff for $3,000 less $400..

Order affirmed.