## J. L. VOUGHT v. LYNN A. PORTER.[1]

June 25, 1926.

No. 25,221.

**Agreement not within statute of frauds.**

1. An agreement to pay a vendee in an executory contract for the purchase of land a sum of money for his abandonment of such contract is not within the statute of frauds.

**Trial court has discretion as to admission of collateral matters tending to prove controverted issue.**

2. The admission of collateral matters tending indirectly to prove a controverted issue is largely within the discretion of the trial court, and no abuse appears in the ruling excepted to.

[1]Reported in 209 N. W. 642.

**Evidence insufficient to prove vendor agreed to pay vendee for abandoning his contract to buy.**

3. The evidence examined and *held* insufficient to establish that the vendor had made the agreement to pay the vendee a certain sum for the latter's abandonment of the executory contract to purchase a farm.

Evidence, 22 C. J. p. 164 n. 74; p. 749 n. 66.
Executors and Administrators, 24 C. J. p. 404 n. 71.
Frauds, Statute of, 27 C. J. p. 202 n. 24.

See 25 R. C. L. p. 579; 4 R. C. L. Supp. p. 1592.

J. L. Vought appealed to the district court for Mower county from the decision of the probate court disallowing his claim against the estate of Ole Rierson, deceased. The appeal was heard by Johnson, J., and a jury which returned a verdict in favor of plaintiff. Lynn A. Porter, executor and defendant, appealed from an order denying his motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*George W. W. Harden* and *S. D. Catherwood,* for appellant.
*F. G. Sasse* and *R. A. Dunnette,* for respondent.

HOLT, J.

Defendant appeals from an order denying his motion in the alternative for judgment non obstante or a new trial.

The facts leading up to and surrounding the alleged oral contract upon which the verdict was based are, in substance, these:

The deceased, Ole Reierson, had acted as agent in selling a farm of 160 acres in Iowa, near LeRoy this state, for Harry Peterson to plaintiff under a contract at the price of $23,200; $1,000 cash; $8,200 to be paid March 1, 1920, and balance by assuming two mortgages for $14,000 existing against the farm. The payment of March 1, 1920, was not met. In the meantime Reierson had become the legal owner of the farm, and on March 29, 1920, he entered a contract with plaintiff to take the place of the contract with Peterson. Thereunder plaintiff paid another $1,000 and agreed to pay $1,000 on or before August 1, 1920; $1,000 on or before November 1, 1920; and

$5,200 on or before March 1, 1921, at which time deed was to be given and a purchase money mortgage for the balance of $14,000. It also appears that Reierson negotiated a sale of the farm for plaintiff to one Stultz. The terms of the sale do not appear, only this: Stultz gave plaintiff a note for $1,000 and a deed to 160 acres cutover land in Wisconsin. The note and contract were left with Reierson, according to plaintiff's recollection, and he thinks the contract was assigned to Reierson but is not certain as to that. One Meyerhoff was a tenant on the farm in 1921, the lease is not in evidence but he claimed Stultz as landlord. He surrendered possession to Reierson and his tenant, one Menses, in March, 1922. In November, 1923, Reierson died. Defendant was duly appointed executor, and plaintiff filed a claim against the estate. The decision of the probate court thereon was appealed from. In the district court a complaint was filed which alleged in short that defendant as executor was indebted to plaintiff in the sum of $2,000 on account of the abandonment by plaintiff of his contract to purchase the farm mentioned from Reierson, that Reierson agreed to pay back to plaintiff the amount he had paid on the purchase of the farm for such abandonment, and that plaintiff thereupon wholly abandoned said contract and turned over the possession of the farm to Reierson. By amendment the agreement was alleged to have been made in the summer of 1921. The answer was in the main a general denial, with an admission that in November, 1919, Reierson acquired ownership of the farm from Peterson.

The assignments of error may be treated under three heads: Is the alleged oral contract unenforceable because within the statute of frauds? Was it error to exclude evidence as to business habits of Reierson? Was the evidence sufficient to justify the verdict?

Prior decisions determine that a vendee who has but partially performed a contract to purchase lands may abandon the same so as to end all his right and interest in or to the lands without there being any writing executed to that effect by the parties. Smith v. Glover, 50 Minn. 58, 52 N. W. 210, 912; Mathwig v. Ostrand, 132 Minn. 346, 157 N. W. 589; Bringgold v. Stucky, 162 Minn. 343, 202

N. W. 739; Graceville State Bank v. Hofschild, 166 Minn. 58, 206 N. W. 948. True, a legal abandonment is not to any person or party, but abandonment coupled with surrender of possession may serve as consideration for a promise to pay back money otherwise forfeited to the vendor. We do not consider the contract declared on within the statute of frauds.

Defendant's offer to show that Reierson's custom and habit was to pay his debts promptly was rejected and error is claimed. The evidence was offered as tending to negative the existence of a promise to pay money which the habits of Reierson long before this would have redeemed. How far litigants may go in the introduction of evidence bearing upon the likelihood that an oral contract, which the one asserts and the other party denies, was made where, as here, no direct evidence is available, because one party to the alleged contract is dead and the other is precluded from testifying, is largely discretionary with the trial court. Chrysler v. Randolph S. & G. Co. 155 Minn. 297, 193 N. W. 677; Dun. Dig. § 325. The exclusion of such testimony will rarely suffice for a reversal. It should not here, because the offer was not full enough to show much of a bearing upon the issue. Had it gone to the extent of showing that plaintiff had been financially hard pressed and Reierson had been affluent during all the time since the summer of 1921, the ruling might well have been different. Fisher v. Plimpton, 97 Mass. 441, would then have been in point.

The majority of the court are of the opinion that the verdict is without adequate support. As already indicated the contract or promise to pay plaintiff is not evidenced by any writing, nor did anyone testify to being present and hearing Reierson make such a promise to plaintiff. All there is in the record is this testimony by Mr. and Mrs. Meyerhoff, tenants of Stultz who had been in possession of the farm and were moving off in March, 1922, at which time Ole Reierson was there. Mr. Meyerhoff testified: "I was getting ready for moving and he [Reierson] would like to have me stay. He was going to fix it up. I said: 'Isn't Vought going to own the farm?' He said: 'No, I am going to take it back, intend to take it back and

pay him back what I owe him.' He didn't say how much.  *  *  *
He commenced fixing the barn when I was moving." On cross-ex-
amination he testified that Reierson said: "He was going to pay
him his money back." The court put this question to the witness:
"Did he say that he had taken back the land or was going to take it
back?" Ans. "He said he was going to take the place back."

Mrs. Meyerhoff testified: "He was talking about that he was
going to take the place back and he was going to fix it up and Mr.
Meyerhoff asked if it wasn't Mr. Vought got the place and he said
no, he was going to take it back and pay Mr. Vought his money
back." At most these statements of Reierson relate to the future,
to what he intended to do.

After the evidence was in, plaintiff asked for leave to amend the
complaint so as to allege that the abandonment occurred in the sum-
mer of 1921. Hence, if the testimony of the Meyerhoffs is to be
taken to refer to the past transaction claimed by the plaintiff, the
ordinary and usual meaning cannot be given the language used by
Mr. Reierson. Moreover the record is very inconclusive as to whether
plaintiff had anything to abandon or any possession to surrender
subsequent to May 19, 1921, when he sold to Stultz. He is not cer-
tain that he assigned the Stultz contract to Reierson, and it is not
claimed that the latter promised to pay the $2,000 for an assign-
ment of that contract, or that that was the one abandoned. Nor is
it probable that at that time this would have been done, because
Stultz had agreed to pay $175 per acre for the farm, so there was
quite a profit for plaintiff, should Stultz carry it out. And, not-
withstanding the recital in the extension agreement between plain-
tiff and Stultz that the latter was not to have possession of the farm
until $5,000 had been paid by him on October 1, 1921, plaintiff
testified that possession was given Stultz when he bought, and ever
thereafter Stultz's tenant, Meyerhoff, was in possession.

We do not overlook the testimony that Reierson acted as agent
in the sale of the land to plaintiff, also for plaintiff in the sale to
Stultz, that plaintiff turned over to him the $1,000 note Stultz gave
plaintiff as part payment, and that he thinks the contract he made

with Stultz was in Reierson's keeping. The fact remains that the only evidence of an agreement to refund the money paid, only half of which Reierson had received as vendor, is an expressed intention of Reierson to do so in the future. And this is inconsistent with the claim of plaintiff that the agreement had been made months before. The improbability of such an agreement existing since the summer of 1921, with no demand for payment until 1924, after Reierson's death, is in no manner explained away in this record. Not being satisfied that all the evidence available has been adduced, there should not be judgment non obstante but a new trial.

There was no such variance in the complaint as amended and the proof that defendant may justly complain.

The order is reversed to the extent that a new trial is granted.

WILSON, C. J. (dissenting.)

I cannot concur in that portion of the opinion holding the evidence insufficient to support the verdict. The proof shows this: Plaintiff held a contract for deed for a farm in which he had agreed to pay $23,200. He had paid $2,000 thereon. It does not matter who received it. Reierson, individually, or as agent, was a party to the transaction and made the trades that caused Vought to make the two payments of $1,000 each. He sold on contract to one Stultz at an advance of $25 per acre. Stultz gave his note for $1,000 and a deed for 160 acres of Wisconsin land as the first payment. Plaintiff got the Wisconsin land. Reierson got the contract and note. Under plaintiff's contract for deed he was entitled to possession. Perhaps he gave the right of possession to Stultz in the sale contract. Stultz being financially embarrassed wrote a letter to plaintiff asking for an extension of time to pay and submitted a written statement of extension in duplicate for execution. Plaintiff executed the extension which in form was addressed to Stultz. It has this recital:

"Possession of said farm is to be given to you October 1, 1921, upon full payment of the amount herein stipulated. All other provisions of said contract of purchase are to stand and be carried out as therein provided."

This contract took the place of all other and prior agreements between the parties as to the right of possession. This extension was made on February 10, 1921. It refers to original contract between the parties as dated May 19, 1920. It refers to the payments due March 1, 1921, and extends $2,500 thereof to July, 1921, and the same amount to October 1, 1921. Under this arrangement plaintiff was entitled to possession. Plaintiff talked to Reierson. Plaintiff gave up the farm, i. e., he no longer assumed to handle it as his own. Reierson went to the tenant and demanded the rent. Why? He kept the Stultz $1,000 note. By what authority? He rented the farm to a new tenant. He made improvements on the farm. He was the fee owner. He did not cancel plaintiff's contract. Why not? His assumption of proprietorship over the farm is significant. He told the tenants that he had taken the farm back from plaintiff and that he was going to give plaintiff his money back. Mention is made in the opinion as to the use of future tense which is probably due to the fact that he had not paid—he was yet to do that. Moreover this language was used loosely, perhaps without thought of or reason to suggest what the bargain was but it acknowledges an agreement to "pay Mr. Vought his money back." He did not mention the amount but the record shows that plaintiff had paid $2,000. Reierson kept the farm until his death and his estate now has it. By what right was this possession acquired? Plaintiff concedes that he waived or abandoned his right of possession. Ordinarily he would not do so for nothing. He says he thinks he assigned to Reierson the Stultz contract. The improbability of Vought making the alleged agreement in view of the profitable sale to Stultz, though purely for the consideration of the jury, is of no moment when the record shows as it does that Stultz dropped out of the transaction. It does not show how he was eliminated. Stultz's inability to pay resulting in the extension does not indicate the profits on the sale to him were certain. Reierson must have received some right to collect rents. His unexplained conduct strongly supports the claim of plaintiff. The opinion says that Vought made no demand upon Reierson in his lifetime. The record does not support such a statement. The record is silent. It is fair to say that the record does

not show that such demand was made. Reierson is dead. Plaintiff cannot testify as to the talk between them. I am thoroughly satisfied that the evidence and the circumstances justified submitting the question to the jury and that the verdict should be sustained.