R. C. MATHWIG v. ANDREW OSTRAND AND OTHERS.[1]

April 20, 1916.

Nos. 19,597—(50).

**Vendor and purchaser — vendee may abandon contract.**

1. The vendee in a contract for the sale of lands may abandon his unperfected equitable title.

**Same — statutory notice of termination of contract by vendor.**

2. The statute, G. S. 1913, § 8081 (R. L., 1905, § 4442, as amended by Laws 1913, c. 136), provides the exclusive method by which the vendor

[1]Reported in 157 N. W. 589.

in a contract of sale may terminate the rights of the vendee because of defaults in performance; but it does not relieve the vendee from the effect of an abandonment which the vendor elects to treat as such and in which he acquiesces.

**Same — abandonment of contract by both parties.**

3. The evidence is sufficient to justify a finding of mutual abandonment of a contract of sale of lands, that is, an abandonment by the defendant which the plaintiff elected to treat as such and in which he acquiesced.

Action in the district court for Marshall county against Andrew Ostrand and his wife, Albert Ostrand, G. N. Morkassel and Fred Enix to enforce specific performance of a contract to convey land. The action was tried before Grindeland, J., who made findings and ordered judgment dismissing the action. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Julius J. Olson, Charles Loring and G. A. Youngquist,* for appellant.
*A. N. Eckstrom,* for respondents.

. DIBELL, C.

Action to enforce the specific performance of a contract to convey certain farm lands in Marshall county. The court found that the contract was mutually abandoned and denied the plaintiff relief. He appeals from the order denying his motion for a new trial.

1. Under the contract the plaintiff had an equitable title with the right of possession. He had not paid according to the contract and was not entitled to a deed. An unperfected equitable title such as this may be lost by abandonment. Smith v. Glover, 50 Minn. 58, 52 N. W. 210, 912. In this case the court very thoroughly considered the effect of an abandonment of an equitable title, and it distinguished between abandonment and laches, and noted the difference between the effect of abandonment and the effect of estoppel and of adverse possession. It said [page 75]: "Where the equitable right or title is not fully perfected, as where it accrues under a contract, and there remains something for the party to do under the contract in order to acquire, perfect, preserve, or be entitled to a remedy upon it, he may abandon it. He may abandon his

purpose to do what is required under the contract—his purpose to acquire, perfect, preserve, or to become entitled to a remedy upon the right." A similar holding was made in Holingren v. Piete, 50 Minn. 27, 52 N. W. 266. That a perfect legal title cannot be lost by abandonment is held in Krueger v. Market, 124 Minn. 393, 145 N. W. 30, and Purcell v. Thornton, 128 Minn. 255, 150 N. W. 899, and in cases cited therein.

2. The plaintiff contends that there cannot be an abandonment since the enactment of the statute now embodied in G. S. 1913, § 8081 (R. L. 1905, § 4442), as amended by Laws 1913, p. 155, c. 136, providing that the vendor may terminate a contract to convey by the service of a notice as therein provided. The method prescribed by the statute has been held the exclusive method of terminating the contract by the vendor. Lamprey v. St. Paul & Chicago Ry. Co. 89 Minn. 187, 94 N. W. 555; Finnes v. Selover, Bates & Co. 102 Minn. 334, 113 N. W. 883; Chapman v. Propp, 125 Minn. 447, 147 N. W. 442. It is likened to a foreclosure of the vendee's equity of redemption. Hage v. Benner, 111 Minn. 365, 127 N. W. 3; First State Bank of Boyd v. Hayden, 121 Minn. 45, 140 N. W. 132; International Realty & Securities Corp. v. Vanderpoel, 127 Minn. 89, 148 N. W. 895. While this is the exclusive method by which the vendor may terminate the vendee's rights in the contract, it does not follow that the vendee may not by abandonment lose his rights. There is in the statute nothing inconsistent with giving full effect to an actual abandonment. The primary purpose of the statute is to prevent the vendor taking advantage, through a provision in the contract, or otherwise, of the vendee's failure to make payments on time or of other defaults, and depriving him of his rights in the property without a definite notice of cancelation. See Sylvester v. Holasek, 83 Minn. 362, 86 N. W. 336; Tingue v. Patch, 93 Minn. 437, 101 N. W. 792. It is not its purpose to relieve him of the effect of an abandonment of an unperfected equitable title, and we hold that such title may be lost by abandonment.

3. The remaining question is whether the evidence justifies the trial court's finding of mutual abandonment.

The contract was made on September 3, 1912. The consideration was $6,500. The plaintiff paid one dollar in cash. The sum of $499 was payable on November 1, 1912; $400 on March 1, 1913; $1,000 on March

1, 1914; $1,000 on March 1, 1915; $1,000 on March 1, 1916, and the balance of $2,600 was to be paid by the assumption of mortgages. The plaintiff was to pay the taxes. At the time of the sale the lands were in the process of seeding to rye. The plaintiff paid the defendant $95 for the seed. He did not pay the $499 which became due on November 1, 1912, nor the $400 that became due on March 1, 1913, nor the $1,000 that became due on March 1, 1914, nor any of the deferred payments, nor did he pay taxes. On December 31, 1912, the defendant, who was then in the state of Washington, wrote the plaintiff, telling him that the payment on the contract was past due and ought to be paid, and asking for a reply. No answer was made. The defendant claims that on February 16, 1913, he sent the plaintiff a notice of cancelation. The plaintiff denies that such a notice was received, but there is evidence that it was, and a finding to that effect would find sufficient support. The notice did not constitute a valid cancelation, but its receipt has a bearing on the question of abandonment. On February 5, 1914, the defendant wrote the plaintiff, asking him if he could sell him the land and stated his price. On February 9 the plaintiff answered, stating that money was scarce, but that he expected conditions would improve, and asked the defendant to keep in touch with him, and suggested that they "ought to be able to get together on a deal that will be satisfactory to both parties." In this letter he also said this: "Do you still hold that wild quarter in sec. 13, Adgar Twp?" This quarter was included in the contract. On February 16, 1914, the defendant in reply said: "If you want to buy my land you must act at once for I have a chance to trade it off for some property out here." He asked for an immediate reply. On February 26 the plaintiff answered, stating that if the season were a little further advanced he would try to close a deal, that he was just then preparing for the March settlements, and when these were over he would give his proposition of sale further consideration. He asked him not to be too hasty about trading for property in Washington, and said that he would do all that he could to promote his offer, and that it looked "as though we ought to be able to get together a little later on terms that will suit our mutual requirements." On April 10, 1914, the plaintiff again wrote to the defendant asking him how the matters stood in regard to the deal for the farm, who was renting the place, and whether "if we

closed a deal with you at this time in accordance with your recent letter, could we get possession at once and put our own renter on the farm?" About April 19 arrangements were made by the defendant, apparently looking toward a sale of the land, and a tenant was put in possession. On April 22, 1914, the plaintiff commenced this action.

The letters mentioned permit no other view than that the plaintiff had abandoned his rights under the contract of September 3, 1912. Not one suggests a right in the plaintiff under the old contract nor its continued existence. They refer to a new contract.

The plaintiff did not object to the defendant's taking the crops in 1913, or at least the evidence justifies a finding that he did not, and the evidence justifies a finding that he acquiesced in the defendant's possession throughout 1913. His activities in the spring of 1914 in buying seed grain, and in putting in improvements of some small value, were after he had commenced this action. The defendant acquiesced in the abandonment of the premises which was at least as early as some time in 1913. He elected to accept the abandonment. The evidence supports the finding of mutual abandonment. It is quite clear that if the defendant had sued the plaintiff for the unpaid purchase price at the time the plaintiff commenced the action for specific performance, and the plaintiff had defended upon the ground of mutual abandonment, and the evidence were that which is now before us, a finding that there was a mutual abandonment which prevented a recovery of the purchase price would be sustained; and if so a like finding, defeating specific performance, is sustained.

Order affirmed.