THE MELCO INVESTMENT COMPANY v. LAWRENCE GAPP.

105 N. W. (2d) 907.

November 4, 1960—No. 38,020.

*Moses, Friedell, Share, Rosen & Goldstein,* for appellant.
*Ralph J. Coursolle* and *Franklin Petri, Jr.,* for respondent.

DELL, CHIEF JUSTICE.

This is an action for specific performance of an agreement to purchase real estate. Plaintiff appeals from that part of the judgment dismissing its cause of action and from the order denying its motion for a new trial.

The defendant is the vendee under a contract for deed. On March 5, 1957, the parties entered into an agreement whereby the plaintiff agreed to purchase and the defendant agreed to sell his vendee's interest. The agreed purchase price was $11,700, $100 of which was paid down as earnest money. The remainder was to be paid by assumption of a first mortgage and the contract for deed in the total amount of $7,700, together with a cash payment of $3,900 to be paid "on or before date of closing, April 30, 1957, or sooner." The agreement further provided:

"* * * if the title to said property be found marketable,[1] or be so made within said time, and said buyer shall default in any of the agreements and continue in default for a period of 10 days, then and

---

[1] It is assumed for the purposes of this appeal that title was marketable. At the time the contract was executed the defendant gave plaintiff's broker information as to where the abstract of title was available for examination. The trial court properly concluded that this constituted substantial compliance with the provisions of the agreement requiring defendant to furnish an abstract of title.

in that case the seller may terminate this contract, and on such termination all the payments made upon this contract shall be retained by said seller and said agent, as their respective interests may appear, as liquidated damages, time being of the essence hereof; but this provision shall not deprive either party of the right of enforcing the specific performance of this contract provided such contract shall not be terminated as aforesaid, and provided action to enforce such specific performance shall be commenced within six months after such right of action shall arise."

On April 27, 1957, plaintiff, through its president, requested defendant to extend the time of performance of the agreement for a period of 30 to 60 days on the ground that plaintiff was financially unable to meet its terms. Defendant refused to grant the extension but advised plaintiff that he would give the matter further consideration and would call plaintiff's president if he decided to consent to the request. Neither party thereafter communicated with the other prior to the closing date.

On May 14, 1957, plaintiff caused the purchase agreement to be recorded, and on August 30, 1957, requested defendant to deliver the abstract of title for examination prior to closing the transaction. This action was thereafter commenced on September 25, 1957, the plaintiff offering to perform fully in its complaint.[2]

■ There is no dispute that the purchase agreement was not terminated by the defendant. Under the provisions of Minn. St. 559.21, a vendor, in order to terminate a defaulting purchaser's rights without resorting to judicial proceedings,[3] must give 30 days' notice of his intention to do so, regardless of whether such notice is required by the agreement.[4] Even in the absence of statute, the default of the

---

[2]Failure to tender performance before suit affects only the question of costs. Lewis v. Prendergast, 39 Minn. 301, 39 N. W. 802.

[3]The provisions of § 559.21 do not preclude the vendor from either seeking specific performance or from bringing an action to have the contract terminated. Miller v. Snedeker, 257 Minn. 204, 219, 101 N. W. (2d) 213, 225; Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. (2d) 273.

[4]See, Jandric v. Skahen, 235 Minn. 256, 50 N. W. (2d) 625.

plaintiff here would not, ipso facto, work a termination of the contract. Where, as in the instant case, the seller is given the alternative of either exercising his right to declare a forfeiture or continuing the contract in force, it is generally held that some positive act to manifest his intention to terminate the contract is necessary, regardless of whether time is made of the essence.[5] No such action was ever taken by the defendant and the plaintiff was, therefore, entitled to maintain an action for specific performance.[6]

Defendant contends, however, that plaintiff abandoned its rights under the contract and is consequently precluded from now having the agreement specifically enforced. The equitable interest of a vendee under a purchase agreement may be lost by abandonment,[7] and it is well settled that the provisions of § 559.21 do not relieve the purchaser from the effect of such an abandonment.[8] Abandonment has been defined as a voluntary relinquishment of an interest by the owner with the intent of terminating his ownership.[9] The intent may be shown by conduct. Mere failure to pay the purchase price under a real estate contract does not, in itself, constitute an abandonment. There must be other circumstances present, such as, for instance, a lengthy lapse of time, in order that the *intent* to abandon may properly be inferred.[10] The conclusion of the trial court that "the plaintiff abandoned the purchase agreement by its failure to perform the terms thereof on April 30, 1957," is erroneous on its face. Such a holding would establish a doctrine of absolute forfeiture and render § 559.21

---

[5]See, e. g., Asher v. Hull, 207 Okl. 478, 250 P. (2d) 866 (noting that such manifestation is unnecessary where there has been an abandonment by the purchaser); Zumstein v. Stockton, 199 Ore. 633, 264 P. (2d) 455.

[6]See, Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. (2d) 273.

[7]Holingren v. Piete, 50 Minn. 27, 52 N. W. 266.

[8]Graceville State Bank v. Hofschild, 166 Minn. 58, 206 N. W. 948; Enkema v. McIntyre, 136 Minn. 293, 161 N. W. 587, 2 A. L. R. 411; Mathwig v. Ostrand, 132 Minn. 346, 157 N. W. 589.

[9]1 Dunnell, Dig. (3 ed.) § 1.

[10]See, Westercamp v. Smith, 239 Iowa 705, 31 N. W. (2d) 347; Collins v. Collins, 348 Mich. 320, 83 N. W. (2d) 213, 68 A. L. R. (2d) 575; cf. Erickson v. Sinykin, 223 Minn. 232, 26 N. W. (2d) 172, 170 A. L. R. 697.

a nullity. Nor do we feel that, under the circumstances here, the delay of 4 months sufficiently establishes an intent to abandon. No case has been called to our attention, nor has our research disclosed any authority, supporting the proposition that a failure to tender payment for this relatively brief period of time, in itself, constitutes an abandonment. The situation here is not comparable to that in Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. (2d) 273, relied upon by the defendant. In that case no part of the purchase price, not even the earnest money downpayment, was offered or paid to defendant despite the latter's demands. After the default of the vendee, the defendant told the vendee's agent that "the deal was off" and reclaimed his title certificate and quitclaim deed. Eighteen months after the closing date, the vendee's assignee commenced an action for specific performance. The court found not only that there had been an abandonment by the vendee but also that equitable consideration of bad faith and laches constituted sufficient reason for refusing relief.

■ Abandonment in its technical sense must be distinguished here from delay, laches, or bad faith on the part of plaintiff which renders it inequitable to grant specific performance. While one may not entertain the requisite intent to constitute an actual abandonment of his rights, his actions may, nevertheless, result in a denial of relief.[11] Cases ostensibly decided on the ground of "abandonment" often appear to have been actually determined by the vendee's lack of good faith or other equitable considerations.[12]

Laches in applying for relief does not appear to be involved in the instant case. It is suggested, however, that plaintiff's delay in tendering performance was motivated by its desire to speculate on the increase in the value of the land. No specific findings were made by the trial court on the question of lack of good faith by plaintiff and, since a

[11]See, 17 Dunnell, Dig. (3 ed.) §§ 8792, 8798.

[12]In Enkema v. McIntyre, 136 Minn. 293, 161 N. W. 587, 2 A. L. R. 411, the court noted that it was not using the term "abandonment" in its technical sense but rather to show that the vendee's conduct was such as to render it inequitable to grant specific performance. Cf. McDermid v. McGregor, 21 Minn. 111.

settled case is not before us, we have no way of determining whether the evidence would support such a finding. In its memorandum the court states that the "sole reason for the failure to perform the contract at the appointed time was their [plaintiff's] financial inability to do so * * *." While this conclusion would seem to rebut any inference of bad faith, the memorandum further states that plaintiff was "stalling for time"; "intended to perform only in the event it suited its interest"; and was guilty of such "lack of good faith" as to preclude specific performance. The trouble is, however, that where the memorandum is not made a part of the decision, as in the instant case, we cannot treat statements therein as the equivalent of findings of fact.[13]

Since the trial court's conclusions of law are not supported by the findings of fact, we have no alternative but to reverse the judgment.[14]

Reversed.

---

[13]Fletcher v. Southern Colonization Co. 148 Minn. 143, 181 N. W. 205; cf. McMillen v. Meyer, 246 Minn. 132, 74 N. W. (2d) 393.

[14]Naffke v. Naffke, 240 Minn. 468, 62 N. W. (2d) 63; Lee v. Delmont, 228 Minn. 101, 36 N. W. (2d) 530.