# JUSTINE J. TARPY v. RAYMOND L. NOWICKI AND ANOTHER.

175 N. W. (2d) 443.

March 6, 1970—No. 41567.

*Louise Miller O'Neill,* for appellants.

*John E. Daubney,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

This is an appeal from a judgment of the district court in an action for contractual rescission and damages. Defendants, vendors under a contract for deed, appeal, contending that this action was precluded by a statutory cancellation of the contract for deed. Defendants further contend that their conduct did not constitute a material breach of the contract and that plaintiff-vendee cannot elect to rescind when she is in default under the terms of the contract. Finally, defendants submit that plaintiff's conduct constitutes an abandonment of the contract.

From the record it appears that plaintiff-vendee, Justine J. Tarpy, purchased a 17-unit apartment building from defendant-vendors, Raymond L. and Edith M. Nowicki, on July 31, 1962. The total purchase price was $168,000, with a $13,000 downpayment and the balance of $155,000 to be paid in the amount of $956.46 on August 1, 1962, and $1,256.46 on the first day of each succeeding month until paid down to the balance of a mortgage to Twin City Federal Savings & Loan Association in the original amount of $120,000. In addition, plaintiff was required to make principal payments of $1,000 on March 1, 1963, and again on September 1, 1963, and was responsible for the real estate taxes.

Plaintiff, a widow, was a civilian librarian employed by the United States Armed Services in Germany. Upon her departure for Germany, she asked her son, Gerald J. Tarpy, to manage the

apartment building. Plaintiff visited the premises during her vacations in 1963 and 1964. In June 1964, while vacationing in Minnesota, she was informed that her son would be unable to manage the premises any longer because of an impending job transfer. Accordingly, plaintiff executed a document entitled "Lease Sale Agreement" to John Skahen, dated July 9, 1964. By the terms of the agreement, Mr. Skahen, a real estate agent who had arranged the original sale for the vendors, assumed management of the building. He was to offer the property for sale, but any sale was subject to plaintiff's approval. The agreement provided: "All money, from rents, over and above contract payments and expenses to be retained by Skahen during this lease period."

On October 1, 1964, the principal balance of the contract for deed had been reduced to $143,117.19. However, in the latter part of 1964, plaintiff became delinquent in her contractual obligations which, by December 1964, amounted to a deficit of $4,056. Moreover, unpaid taxes, plus penalties, were past-due in the amount of $5,365.

On November 24, 1964, defendants mailed the following notice to each of the tenants in the apartment building:

"Please be advised that we are taking over the management of the building at 8216 W. 31st St., St. Louis Park.

"All checks for rent now due or which shall subsequently become due are to be made payable to Raymond L. Nowicki and mailed to me at 1867 Carroll Avenue, St. Paul 4, Minnesota."

On December 4, 1964, defendants' attorney mailed a letter to plaintiff which mentioned the delinquencies and made reference to a possible cancellation of the contract. Mr. Skahen mailed a letter to defendants on December 3, 1964, stating that, in view of their intervention, he was abandoning his interest in the property. Defendants proceeded to collect rents in December 1964 and continued to do so to the time of trial of this action in March 1968. Defendants applied the rent receipts to certain expenses and to the arrearages under the contract for deed.

Defendants initiated cancellation proceedings and, because plaintiff was in Germany, gave notice of cancellation by publication. The notice of cancellation was published on February 25, March 4, and March 11, 1965, and was served on the occupants of the apartment building on March 5 and 6, 1965. The notice specified that the contract would be terminated 30 days after service of the notice and was signed by the attorney for vendors.

The contract for deed provides that, in the event of default in payments by the vendee, the vendors may, at their option, "by written notice declare this contract cancelled and terminated, and all rights, title and interest acquired thereunder by [vendee], shall thereupon cease and terminate, and all improvements made upon the premises, and all payment made hereunder shall belong to said [vendors] as liquidated damages for breach of this contract." The contract goes on to provide that the notice of such termination shall be "in accordance with the statute in such case made and provided."

Minn. St. 559.21, providing for such notice of cancellation, states in part:

"When default is made in the conditions of any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same * * *.

"Three weeks published notice, and if the premises described in the contract are actually occupied, then in addition thereto, the personal service of a copy of the notice within ten days after the first publication of the notice, and in like manner as the service of a summons in a civil action in the district court upon the person in possession of the premises, shall have the same effect as the personal service of the notice upon the purchaser, his personal representatives or assigns, either within or without the state as herein provided for. In case of such service by publication, as herein provided, the notice shall specify the conditions in which default has been made and state that such contract will terminate 90 days after the service of such notice, unless prior

thereto the purchaser comply with such conditions and pay the costs of service and attorneys' fees as provided herein, and the purchaser, his personal representatives or assigns, shall be allowed 90 days from and after the service of such notice to comply with the conditions of such contract."

The findings of the trial court, so far as here relevant, recite:

"On or about November 24, 1964, defendant, Raymond L. Nowicki, by registered mail, as reflected in Plaintiff's Exhibit 'E', sent notice to each of the occupants of the apartment building located at 8216 31st Street, St. Louis Park, advising said tenants that all rents 'now due or which shall subsequently become due are to be made payable to Raymond L. Nowicki.' Thereafter defendants did in fact receive all rents on the premises and have continued to receive said rents up until the time of trial herein.

"The defendants, acting through their attorney, subsequently prepared and published the cancellation of Contract for Deed, Defendant's Exhibit '5', and service was made upon the plaintiff herein by publication, in the St. Louis Park Dispatch on February 23rd [sic], March 4th, and March 11th, 1965. Service was made upon the tenants on March 5th and 6th, 1965. The contract was finally terminated in July, 1965, pursuant to said cancellation notice.

"At the time of the mailing of defendant's notice to pay rents, Plaintiff's Exhibit 'E', the property herein had a market value of $168,000.00, and plaintiff had an equity therein in the sum of $24,882.81."

The trial court concluded that the fact that the vendee was delinquent in payments due under the contract did not give the vendors the right "to unilaterally deprive plaintiff [vendee] of the possession of the property and the rents due therein * * *. The contract having been breached, the plaintiff had several remedies under the law, and in the instant case plaintiff elected to rescind

the contract and sue for damages therefor. In such an action the vendee is entitled to recover full compensation, and in this case the measure of damages is based on the market value of the property, and the interest of the parties under the contract as of November 24, 1964."

 Defendants contend that the vendee was without right to recover damages as a result of the vendors' actions and rely on certain language found in Stadelmann v. Boothroyd, 170 Minn. 430, 431, 212 N. W. 908: "The right to rescind on the ground of failure of performance belongs to the party who is free from default." Defendants argue that plaintiff cannot recover because she was in default under the terms of the contract. Whatever validity this principle of law may have in the ordinary contract situation, it is without force when applied to a contract for deed, cancellation of which is provided for by Minn. St. 559.21. The Melco Investment Co. v. Gapp, 259 Minn. 82, 105 N. W. (2d) 907. We have held that, in the absence of abandonment by the vendee or resort to judicial proceedings, the method prescribed by statute is the exclusive method by which the vendor can terminate a contract for deed. Mathwig v. Ostrand, 132 Minn. 346, 157 N. W. 589; The Melco Investment Co. v. Gapp, *supra;* Ballard v. Friedman, 151 Minn. 493, 187 N. W. 518; 20 Dunnell, Dig. (3 ed.) § 10091. The statutory method of terminating the contract is similar to a foreclosure of the vendee's equity of redemption. The statute contemplates that a breach by the vendee may be satisfied within a reasonable time. We said in Mathwig v. Ostrand, 132 Minn. 346, 348, 157 N. W. 589:

"* * * The primary purpose of the statute is to prevent the vendor taking advantage, through a provision in the contract, or otherwise, of the vendee's failure to make payments on time or of other defaults, and depriving him of his rights in the property without a definite notice of cancellation."

We think the decision of the trial court is supported by Engel v. Mahlen, 153 Minn. 1, 189 N. W. 422, 7 Minn. L. Rev. 70;

Halvorson v. Bexell, 157 Minn. 97, 195 N. W. 635; and 20 Dunnell, Dig. (3 ed.) § 10092. In Engel v. Mahlen, 153 Minn. 1, 4, 189 N. W. 422, 423, we pointed out that the rights of the purchaser were not forfeited merely by delinquency in making an installment payment and that "[d]efendants were not justified on that account in repudiating the contract and conveying the land to another person." We there pointed out that the vendors' unqualified repudiation relieved the vendee from tendering further performance on his part and entitled him to pursue one of the remedies which the law gives when there has been an anticipatory breach of a contract. We said (153 Minn. 4, 189 N. W. 423):

"* * * It is well settled that where one party repudiates the contract, the other party has an election to pursue one of three remedies: (1) To treat the contract as rescinded and avail himself of the remedies which may be based on a rescission; (2) to treat the contract as still binding and wait until the time arrives for its performance and then sue and recover under the contract; (3) to treat the renunciation as an immediate breach and sue at once for any damages which he may have sustained."

We agree with the trial court that under the circumstances defendants' breach gave to plaintiff the right to elect to rescind the contract and sue for damages.

Defendants further contend that the cancellation effectively removed from the transaction any grounds which might support plaintiff's action for damages growing out of the breach. This asserted error presupposes that the contract was properly cancelled and that plaintiff-purchaser waited too long in making an election to rescind and sue for damages. It is obvious from the record that the attempted cancellation by publication of notice was not valid since the time specified for compliance in the notice was 30 days rather than 90 days as required by statute. The claim is made by defendants that this defect was waived in open court by counsel for plaintiff, but the record is ambiguous as to whether or not such a waiver was in fact made, and whether

it could be made is unexplored in the briefs. As we understand the thrust of defendants' argument, it is that, even though the vendors may have repudiated the contract by their actions, the effect of the cancellation proceedings was to remit the breach and impose upon the vendee, if she wished to salvage her interest, the obligation of reinstating the contract pursuant to the attempted notice. This contention is answered by evidence that the vendors continued their repudiation of the contract by occupancy and collection of rents during the time the cancellation proceedings were pending. Under the circumstances, the vendors' repudiation of the contract was not effectively withdrawn so as to deny the vendee the right to recover damages.

■ Defendants' contention that plaintiff abandoned the contract may be summarily disposed of by observing that, until the vendors unilaterally repudiated the contract and took possession of the property, the vendee was in possession of the premises through her agent and caretaker. Ahlstrand v. McPherson, 285 Minn. 398, 173 N. W. (2d) 330.

Affirmed.