Neil P. FLYNN and Lucia Flynn, Respondents,

v.

Robert T. SAWYER and Violette I. Sawyer, Appellants.

No. 48214.

Supreme Court of Minnesota.

Nov. 24, 1978.

---

Mackenzie, Gustafson, Litynski & Lucas, St. Peter, for appellants.

Raphael J. Miller, Miller & Cowell, Gaylord, for respondents.

Heard before TODD, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from an order and judgment of the Sibley County District Court granting specific performance of a contract to convey land in favor of the plaintiffs upon their tender of $4,000, plus interest and payment for certain personal property and harvest proceeds. It was also ordered that a defect in title resulting from an outstanding judgment against defendants be corrected. We affirm.

Defendants Robert and Violette Sawyer, purchased the farm in issue from John and Lena Meyer on a contract for deed dated August 8, 1966, and listed it for sale with the Sinell-Rohloff Realty Company in February 1971. The realtors brought plaintiffs Neil and Lucia Flynn to the farm in February and they signed a purchase agreement on March 20, 1971. The purchase price was $68,000—$1,000 down payment, $25,000 on closing on April 20, 1971, and an assumption of the $42,000 balance on the Meyer contract for deed. Defendants agreed to make the June 3, 1971, payment on the Meyer contract for deed and to pay the real estate taxes due in October 1971.

On April 21, 1971, the parties modified the purchase agreement, extending the closing date to May 3, 1971. If plaintiffs did not pay $25,000 on that date, defendants were to retain possession until November 1, 1971, and plaintiffs were to pay $5,000 on June 1, 1971, and $20,000 on October 1, 1971. The parties signed another supplemental agreement on May 10, 1971, which provided for $4,000 to be paid at the signing and $21,500 to be paid within 30 days or as soon as defendants executed an assignment of the Meyer contract for deed. On September 8, 1971, defendants canceled the listing contract with the realty company and

signed a farm lease and option with plaintiffs. The option recited a payment of $2,000 with $19,500 due on or before December 15, 1971, and plaintiffs to assume the contract for deed. The lease covered a 1-year period, and specified rent payments of $2,000 on September 8, 1971, and $3,000 on December 1, 1972.

In addition to the $1,000 earnest money paid on March 20, 1971, plaintiffs have paid defendants $4,000 on May 10, 1971, $2,000 on August 27, 1971, and $15,000 on September 9, 1971, for a total of $22,000. They have been in possession of the farm since September 23, 1971; have paid all the real estate taxes since that date including the taxes due in October, 1971; have made payments on the Meyer contract for deed since December 3, 1971; and have made improvements on the farm. Plaintiffs also purchased certain items of personal property from defendants and helped harvest defendants' crops in 1971.[1] No rent was demanded by the defendants during this time.

On numerous occasions between September 1971 and June 1974, plaintiffs attempted to complete their various transactions with defendants, but never were able to do so. Defendants never actually denied the existence of the contract, and on June 11, 1974, the parties met to discuss it. Their written memoranda from this meeting indicated $4,000 due on the contract plus interest of $960; $22,000 of the original $26,000 contracted for having been paid. In January, 1975, defendants notified plaintiffs that they would be evicted from the farm because they had not exercised the option. In response plaintiffs again tendered payment on March 13, 1975, which defendants rejected.

Plaintiffs then sued for specific performance of the original purchase agreement as amended. Defendants, contending that their relationship was governed by the lease and option, counterclaimed for rent as well

as proceeds from the 1971 harvest. Plaintiffs testified, over defendants' objection, that the option and lease were signed solely to defraud the realtor of his commission.

We are presented with the following legal issues in this case:

(1) Did the trial court err in admitting parol evidence of the June 11, 1974, meeting and/or of the purpose of the option and lease?

(2) Does the clause in the original purchase agreement restricting the time for bringing an action for specific performance to within six months from when the cause of action arose bar plaintiffs from obtaining relief?

(3) Does the doctrine of "unclean hands" preclude granting plaintiffs specific performance?

(4) Can defendants terminate plaintiffs' interest in the property without complying with the provisions of Minn.St. 559.21?

■ 1. Defendants allege that the trial court must have relied on oral evidence of the June 11, 1974, meeting and oral evidence concerning the purpose of the option and lease, in violation of the parol evidence rule, in order to have granted specific performance. The June 11, 1974, meeting occurred long after the documents comprising the contract in this case were signed. The parol evidence rule does not exclude evidence of subsequent oral modifications to a contract. *Duffy v. Park Terrace Supper Club, Inc.*, 295 Minn. 493, 498, 206 N.W.2d 24, 27 (1973); *Hafiz v. Midland Loan Finance Co.*, 206 Minn. 76, 78, 287 N.W. 677, 678 (1939).

■ Defendants also contend that the two memoranda written at this meeting constituted the only admissible evidence, under the parol evidence rule, of what occurred at this meeting. When parties reduce their agreement to writing, parol evi-

---

1. The trial court found that plaintiffs owed defendants $1,845 on these transactions and these amounts are not in dispute on this appeal.

dence is ordinarily inadmissible to vary, contradict, or alter the written agreement. But parol evidence is admissible when the written agreement is incomplete or ambiguous to explain the meaning of its terms. See, *Bussard v. College of St. Thomas, Inc.*, 294 Minn. 215, 224, 200 N.W.2d 155, 161 (1972); *Jimmerson v. Troy Seed Co.*, 236 Minn. 395, 398, 53 N.W.2d 273, 276 (1952). The memoranda of the June 11, 1974, meeting—one copy retained by plaintiff and one by defendants—are clearly ambiguous and they do not contain the complete agreement of the parties. Although they do suggest that $4,000 was due and owing on the contract for deed, many of the figures in these memoranda are not labeled and could refer to any of the parties' numerous transactions. Because these memoranda are ambiguous and incomplete, the trial court did not err in admitting parol evidence concerning the June 11, 1974, meeting.

Defendants objected to plaintiffs' attempts to introduce oral evidence that the option and lease were signed solely to defraud the realtor of his commission. The trial court refused to grant defendants a continuing objection to this testimony, and plaintiffs were permitted to testify to the purpose of the option and lease.

It is unclear whether parol evidence is admissible to prove that a written contract was signed to defraud or deceive a third party, compare *Graham v. Savage*, 110 Minn. 510, 515, 126 N.W. 394, 396 (1910), with *Hamilton v. Boyce*, 234 Minn. 290, 48 N.W.2d 172 (1951). It is not necessary, however, to decide this issue because the evidence is unquestionably admissible for another reason. It is well settled that parol evidence is admissible to explain the parties' conduct subsequent to the written agreement. *Weyerhauser Co. v. Hvidsten*, 268 Minn. 448, 453, 129 N.W.2d 772, 776 (1964); *Fountain v. Oreck's Incorporated*, 245 Minn. 202, 211, 71 N.W.2d 646, 651 (1955). In this case we have numerous written documents. The time for payment

was extended on at least three different occasions. Many of the transactions are disputed and have been changed numerous times; thus, the court needed the explanations of the various documents not to vary the terms but to understand the circumstances and meaning of the contract and the intent of the parties. The trial court granted specific performance based on its finding that the parties reaffirmed their contract to sell the property on June 11, 1974. To do this the trial court did not need to decide if the option and lease were signed solely to defraud the realtor, and the trial court did not make a specific finding on this issue. Thus, the trial court did not err in admitting plaintiffs' testimony concerning the purpose of the option and lease agreements.

2. Defendants argue that plaintiffs are barred from recovery because they did not comply with the provision of the original purchase agreement requiring them to commence suit within six months of when the cause of action arose. This argument is premised on defendants' contention that time was of the essence in this contract. Yet defendants waited for two years after the lease expired without collecting rent from plaintiffs and three years after the option expired to attempt to reclaim possession of the property.

 Although plaintiffs did not sue within six months, a court sitting in equity can refuse to enforce such a clause when to do so would be unconscionable. See, *Rymland v. Berger*, 242 Md. 260, 219 A.2d 7 (1966). In the present case plaintiffs have been in possession of the farm since September, 1971; have paid all the real estate taxes since October, 1971; have made payments on the Meyer contract for deed since December, 1971; have made improvements on the farm; and have paid defendants all but $4,000,[2] which they have attempted to pay on numerous occasions. To deny plaintiffs specific performance because of the six-month clause would be unconscionable.

---

2. Defendants claim plaintiffs owe $4,500, not $4,000, on the purchase agreement. Plaintiffs

tendered $4,500, but the trial court found that plaintiffs had paid the real estate taxes due in

■ 3. In addition, defendants claim plaintiffs are guilty of unclean hands and thus barred from recovery because they allegedly tampered with two pieces of evidence and participated in defrauding the realtor. Either of these acts, if proved, might be sufficient for a finding of unclean hands. See, *Johnson v. Freberg*, 178 Minn. 594, 597, 228 N.W. 159, 160 (1929). The trial court, however, did not make a specific finding that plaintiffs did tamper with the evidence or that the option and lease were actually signed to defraud the realtor. Neither finding was necessary, since the trial court based its decision on a finding that the parties reaffirmed their original contract on June 11, 1974. There is thus no basis upon which we can hold plaintiffs guilty of unclean hands.

■ 4. Finally, plaintiffs contend that granting specific performance was proper in this case because Minn.St. 559.21 [3] applies and there never was sufficient notice of cancellation of the original purchase agreement. In the absence of abandonment by vendees or resort to litigation by vendors, Minn.St. 559.21 does provide the exclusive means by which a vendor can cancel a vendee's interest in real estate. *Tarpy v. Nowicki*, 286 Minn. 257, 262, 175 N.W.2d 443, 447 (1970).

■ In the present case the parties signed the original purchase agreement on March 20, 1971, and amended it on April 21, 1971, and May 10, 1971. Plaintiffs never received any notice that the contract was terminated and continued to make payments on it through September, 1971. Absent compliance with the notice procedure of Minn.St. 559.21, the mere fact that plaintiffs were delinquent in making payments was not sufficient to terminate the contract. Nor was the provision in the May 10, 1971, agreement that defendants could declare the contract void if plaintiffs defaulted in payments adequate to terminate the plaintiffs' interest in the property. See, *Mathwig v. Ostrand*, 132 Minn. 346, 348, 157 N.W. 589 (1916). Thus, plaintiffs' interest in the land has not been terminated, as the requirements of § 559.21 have not been met.

■ In deciding the issues in this appeal defendants ask us to ignore the trial court's findings and make our own findings based on the standard of review enunciated in *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305, certiorari denied, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). Under that standard we will make our own findings when the evidence is both written and oral only when the written evidence or undisputed facts render the credibility of the oral testimony extremely doubtful or the trial court's findings rest exclusively on the written evidence or undisputed facts so that credibility is irrelevant. In this case the trial court had to rely on oral evidence to resolve conflicts in the written evidence. Thus, the standard of *In re Trust Known as Great Northern Iron Ore Properties, supra*, does not govern this case. In fact, the decision in this case depends on resolving conflicts in the facts and on the credibility

October 1971 in exchange for defendants' payment in June 1971 on the Meyer contract for deed. This finding is amply supported by the evidence. Under the original purchase agreement plaintiffs were to pay defendants $26,000 and assume payments of $42,000 on the contract for deed. According to the May 1971 supplemental agreement the plaintiffs owed defendants $26,500 and were to assume payments of $41,500 on the contract for deed. Defendants were obligated under both agreements to pay the taxes due in October 1971; however, plaintiffs paid these taxes of approximately $500.

3. "559.21 TERMINATION OF CONTRACT OF SALE; NOTICE, SERVICE AND RETURN, COSTS, REINSTATEMENT. When default is made in the conditions of any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same, he may do so by serving upon the purchaser, his personal representative or assigns, either within or without the state, a notice specifying the conditions in which default has been made, and stating that such contract will terminate * * * [the statute goes on to spell out the specific notice requirements to be followed]."

910

of the witnesses, which are issues to be resolved by the trial court as trier of fact. See, e. g., *Conroy v. Kleinman Realty Co.*, 288 Minn. 61, 66, 179 N.W.2d 162, 165 (1970); *Johnson v. Lorraine Park Apts., Inc.*, 268 Minn. 273, 276, 128 N.W.2d 758, 761 (1964).

██ Specific performance is an equitable remedy addressed to the sound discretion of the trial court. *Fred O. Watson Co. v. United States Life Ins. Co.*, Minn., 258 N.W.2d 776, 778 (1977); *Boulevard Plaza Corp. v. Campbell*, 254 Minn. 123, 134, 94 N.W.2d 273, 283 (1959). Accordingly, we will not interfere unless the trial court clearly abuses that discretion. *O'Brien v. Kemper*, 276 Minn. 202, 212, 149 N.W.2d 487, 493 (1967); *Stugelmayer v. Ulmer*, S.D., 260 N.W.2d 236, 238 (1977).

There has been no showing of abuse of discretion here. The trial court did not err in admitting parol evidence. We therefore feel compelled, as a matter of equity, to affirm the trial court's granting of specific performance.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.