**Judy L. LOPPE, f/k/a Judy L. Bethel, Appellant,**

v.

**Bradley J. STEINER, Respondent.**

**No. A04–2012.**

Court of Appeals of Minnesota.

July 19, 2005.

John G. Westrick, Westrick & McDowall–Nix, P.L.L.P., St. Paul, MN, for appellant.

Stanford P. Hill, Anne C. Towey, Kelly Putney, Bassford Remele, P.A., Minneapolis, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; LANSING, Judge; and MINGE, Judge.

## OPINION

MINGE, Judge.

The parties entered into a purchase agreement for the sale of residential property. Appellant buyer brought an action against respondent seller for specific performance and damages. Appellant challenges the district court's judgment that relied on the unpled defense of abandonment and did not grant appellant's claim for damages. Because the defense of abandonment was implicitly litigated by the parties and appellant does not show surprise or unfairness resulted from its consideration, we affirm the district court's consideration of abandonment. Because the district court's order appears to have only addressed abandonment with respect to the claim for specific performance, we reverse and remand for the district court to determine whether appellant abandoned the purchase agreement with respect to the claim for damages, and if not, what damages are due.

## FACTS

Respondent Bradley J. Steiner owned rental property at 614 19th Ave N.E., Minneapolis (property) that is the subject of this dispute. In 1989, appellant Judy L. Loppe began renting an apartment from respondent at a different location, and the parties became romantically involved. In 1996, appellant rented an apartment at the disputed property.

Starting in 1996, the parties executed several instruments transferring interests in the property between them. Initially, respondent gave appellant an unsigned quitclaim deed with an erroneous legal description. Several months later, respondent gave appellant a signed quitclaim deed with the correct legal description, and the parties executed a contract for deed for $52,500 with appellant as buyer and respondent as seller. After appellant failed to make required payments, respondent decided to end the contract, and in 1999, appellant quitclaimed her interest in the property back to respondent. Appellant states that she executed the quitclaim deed because respondent promised that he would refinance the property and then enter into a new contract for deed with her at a lower interest rate.

On April 10, 2001, the parties signed a purchase agreement for the property for a price of $84,500. According to respondent, he set that price based on the property's market value for real estate tax purposes in 2001. The purchase agreement recited that appellant paid $1,000 in earnest money, but appellant testified that respondent told her that she did not have to pay the earnest money until the closing. Also according to the terms of the purchase agreement, appellant agreed to pay $4,000 from her funds at the closing, with the balance of $79,500 being proceeds from a conventional mortgage. Appellant obtained a loan commitment from Wells Fargo Home Mortgage for $80,275. Appellant received the abstract of title and arranged for title examination, an appraisal, and homeowner's insurance. Although the purchase agreement did not list a closing date, it appears that the closing was set for the end of May 2001.[1] The purchase agreement contained a "time is of the essence" clause and a clause requiring that any action for specific performance be brought within six months after a breach.

Respondent testified that appellant called him a day or two before the closing and stated that she wanted to only pay $52,500 for the property. Respondent did not appear at the closing and testified that "the deal was off as far as I was concerned." It appears that appellant was ready and willing to complete the purchase on the closing day. After the closing did not occur, appellant purchased an extension of her mortgage financing to lock in her interest rate. Subsequently, appellant called respondent and asked him to close on the property. During this time, appellant continued to live in an apartment on the property and to pay monthly rent. In 2002, appellant withheld rent for about six months because she wanted respondent to complete the closing. From 2000 to 2003, appellant was listed as the owner for purposes of real estate taxes and the property was classified as her homestead. In June 2003, respondent notified the city assessor that he was the owner and the city billed respondent for back taxes based on fraudulent classification of the property as appellant's homestead.

On July 1, 2003, respondent initiated an unlawful detainer action to evict appellant

---

1. The district court found that the closing was scheduled for June 30, 2001. This finding appears to be erroneous, but neither party has challenged it, and this error appears to be harmless. *See* Minn. R. Civ. P. 61 (requiring harmless error to be ignored).

from the property for nonpayment of rent. On July 14, 2003, appellant commenced an action claiming that respondent breached the purchase agreement and seeking specific performance or, in the alternative, damages. The parties alleged numerous claims and defenses against each other.

Pursuant to a stipulation, the district court consolidated the actions. Prior to trial, appellant moved to exclude certain affirmative defenses not set forth in respondent's answer. The district court denied the motion and conducted a bench trial. At the time of trial, the property was appraised as having a fair market value of $200,000. On May 19, 2004, the district court entered judgment dismissing appellant's claims with prejudice and ordering her to vacate the property. The district court's original conclusions of law stated in relevant part, "[Appellant's] subsequent demand that the price be reduced to $52,500.00 constituted a counter-offer by [appellant] that served as a rejection of the original purchase agreement. As a matter of law, the purchase agreement terminated at that point and [appellant] could no longer enforce the agreement."

Appellant moved for a new trial or amended findings of fact and conclusions of law. Respondent opposed the motion and urged the district court to conclude that appellant had abandoned the contract by not seeking specific performance within six months. This was the first time that the term "abandonment" was used in the litigation. The district court denied appellant's motion but amended its conclusions of law by deleting the previously quoted language and substituting the following:

[Appellant's] attempt to reduce the contract price to $52,500 and her subse-

quent failure to initiate a specific performance action within the six (6) months specified by the black letter of the purchase agreement constitute an abandonment of the purchase agreement by [appellant]. [Appellant] has also failed to establish the reasonableness of her failure to exercise her rights pursuant to the black letter of the purchase agreement and, as such, has failed to prove up the elements of her claim for relief.

The district court's attached memorandum also stated that respondent "concedes that [appellant] may be correct that her demand for a $52,500.00 actual purchase price did not constitute a rejection of the purchase agreement."

Appellant filed this appeal challenging the district court's dismissal of her claim for damages.

## ISSUES

I. Is abandonment an affirmative defense?

II. Did the parties litigate abandonment by implied consent?

III. Did the district court err in not addressing appellant's claim for damages?

IV. Did appellant so abandon the purchase agreement as to preclude a damages remedy?

## ANALYSIS

### I.

■ The first issue is whether respondent's claim that appellant abandoned her interest in the purchase agreement is an affirmative defense that respondent was required to plead in his answer.[2] Appel-

---

**2.** This issue was not addressed by district court and arose because respondent urged abandonment in a responsive post trial mem-

orandum. The district court then modified its judgment to include abandonment. The underlying issue is a question of law, which we

lant claims that respondent waived the defense because he did not raise it in the pleadings. Minn. R. Civ. P. 8.03 specifies numerous defenses that must be pleaded affirmatively, including estoppel, laches, and waiver. The list is not exclusive and "any other matter constituting an avoidance" must also be pleaded affirmatively. Minn. R. Civ. P. 8.03.

■ The Minnesota Supreme Court in *Snyder v. City of Minneapolis*, outlined criteria for determining whether a defense should be considered an affirmative defense. 441 N.W.2d 781, 788 (Minn.1989). In *Snyder*, the city lost a suit for damages after it unreasonably revoked a building permit. *Id.* at 783–84. The court of appeals reduced the damage award pursuant to the statutory cap, and the plaintiff appealed, asserting that the limit on municipal liability is an affirmative defense. *Id.* at 785. The supreme court found that provisions of the Minnesota Rules of Civil Procedure dealing with affirmative defenses are identical with the federal rules and adopted criteria for identifying affirmative defenses set forth by Charles Wright and Arthur Miller in their commentary on the federal rules. *Id.* at 788. These criteria are surprise and fairness. *Id; see* 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure Civil § 1271 (3d ed.).

The *Snyder* court stated that surprise is a key factor because "had the defense ... been put forward when it could and should have been, it would have been open to plaintiff to pursue at that time such discovery procedures as he considered appropriate in order to develop the true state of facts." *Snyder*, 441 N.W.2d at 788 (alteration in original) (quotation omitted). The *Snyder* court found that the plaintiff was not surprised by the statutory cap on damages because the cap was established in the Minnesota statutes. *Id.* The court also noted that the statutory cap would not completely bar the claim, which is generally a requirement for finding that a matter is an affirmative defense. *Id.*

The *Snyder* court quoted the following from Wright & Miller to explain why the fairness concept is key to requiring that an affirmative defense be specially pleaded: "[A]ll or most of the relevant information on a particular element of a claim is within the control of one party or that one party has a unique nexus with the issue in question and therefore that party should bear the burden of affirmatively raising the matter." *Id.* (quotation omitted). The court found that failure to plead a statutory cap was not unfair because pleading it would not have affected discovery of evidence or evidence introduced at trial. *Id.* Based on this analysis, the court concluded that the cap on municipal liability is not an affirmative defense. *Id.*

■ The criteria of surprise and fairness indicate that abandonment is an affirmative defense. Abandonment, unlike the statutory cap, requires a fact-specific inquiry and determination of the parties' intentions. If the defendant plans to rely on this concept, the plaintiff should be aware of the claim. Moreover, abandonment is an avoidance defense similar to waiver and laches, which are enumerated affirmative defenses. Minn. R. Civ. P. 8.03.

Other states have found that abandonment is an affirmative defense. *See, e.g., Wallace v. Grasso*, 119 S.W.3d 567, 575 (Mo.Ct.App.E.D.2003) (finding that failure to plead the affirmative defense of aban-

address de novo. *See Modrow v. J.P. Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn.2003) (citing *Frost–Benco Elec. Ass'n v. Minn. Pub.*

*Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984)).

donment resulted in waiver of the defense); *Williams v. Williams*, 25 Tenn. App. 290, 156 S.W.2d 363, 371 (1941) (finding that it was necessary to raise defense of abandonment in pleadings otherwise the defense is waived; *San Jacinto Sand Co. v. Southwestern Bell Tel. Co.*, 426 S.W.2d 338, 344 (Tex.Civ.App.1968) ("There was no pleading of abandonment, which is an affirmative defense, and failure to plead it results in its waiver.")). We conclude that abandonment is an affirmative defense.

## II.

■ The second issue is whether the parties litigated abandonment by implied consent. Generally, a court will not consider an affirmative defense not raised in the pleadings. *Minnesota–Iowa Television Co. v. Watonwan T.V. Improvement Ass'n*, 294 N.W.2d 297, 305 (Minn.1980); *Septran, Inc. v. Indep. Sch. Dist. No. 271, Bloomington*, 555 N.W.2d 915, 919 (Minn. App.1996), *review denied* (Minn. Feb. 26, 1997). The rules of civil procedure permit a defendant to amend the pleadings to add an affirmative defense. Minn. R. Civ. P. 15.01; *see also* Federal Practice and Procedure § 1278.

■ If evidence relating to an unpleaded affirmative defense is introduced without objection, the defense is deemed as properly litigated. Minn. R. Civ. P. 15.02; *Clark v. Martinez*, 295 F.3d 809, 815 (8th Cir.2002) (finding that because evidence of self-defense was introduced at trial without objection, self-defense was not waived). "However, if the record indicates that the unpleaded affirmative defense has not been tried by the 'express or implied consent' of the parties, the pleadings will not be treated as if they actually had raised the defense, and the district court may decide not to permit the issue to be litigated." Federal Practice and Procedure § 1278; *see also Leasing Assocs., Inc. v.*

*Slaughter & Son, Inc.*, 450 F.2d 174, 176 (8th Cir.1971) (finding that affirmative defense of illegality was improper basis for reversal because it was not pleaded and record failed "to furnish sufficient basis to warrant a holding that the illegality defense was tried by implied consent").

■ Here, respondent did not include abandonment as an affirmative defense in his pleadings and never made a motion to amend his pleadings to add a defense of abandonment. Appellant actually moved to exclude laches, statute of limitations, justification, and anticipating repudiation as affirmative defenses. The district court denied the motion. However, waiver and estoppel were raised by the respondent as affirmative defenses and are similar to abandonment. Appellant knew that the lapse of time was an issue in seeking specific performance and actively tried to show that the deadline for enforcing the contract was extended by extenuating circumstances of the case. Thus, facts relevant to the problem of delay were placed of record, and the issue was effectively litigated. Although abandonment is an affirmative defense, we conclude that it was tried by implied consent, and we reject appellant's request for reversal on this ground.

## III.

The third issue is whether the district court erred in not addressing appellant's claim for damages. Consideration of this issue is complicated for two reasons: (1) respondent claims that appellant elected to pursue the remedy of specific performance and cannot now claim damages; and (2) it is unclear whether the district court's finding of abandonment for purposes of specific performance applies to the damages claim.

## A. Election of Remedies

■ Respondent claims that because appellant focused on the remedy of specific performance during trial, she is not entitled to pursue her alternative claim for damages. We note that respondent did not raise the election-of-remedies defense in the district court and that we generally do not consider legal theories for the first time on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). Additionally, courts have found that election of remedies is an affirmative defense that must be raised in the pleadings, and respondent did not raise this defense in his pleadings. *See, e.g., Bharodia v. Pledger,* 340 Ark. 547, 11 S.W.3d 540, 543 (2000) ("We have held that the doctrine of election of remedies is an affirmative defense and must be raised in an answer."); *Compass Bank v. MFP Fin. Servs., Inc.,* 152 S.W.3d 844, 852–53 (Tex.App.2005) (finding party precluded from asserting election of remedies as a defense because it is an affirmative defense that the party did not plead), *pet. for review filed* (Tex. June 9, 2005).

■ The merits of respondent's election-of-remedies claim are also unpersuasive. As applied to contracts, the principle of election of remedies requires a plaintiff to choose whether to affirm or disaffirm a contract. *Blythe v. Kujawa,* 177 Minn. 79, 82, 224 N.W. 464, 465 (1929). But election of remedies does not require the plaintiff to choose a specific remedy to argue to the fact-finder. The Seventh Circuit has stated:

> [T]he election of remedies doctrine does not necessarily operate to force plaintiffs to elect a remedy, but to elect how they will proceed to recover for their injury. Forcing the plaintiff to elect the form of the proceedings is merely a requirement erected to prevent the defendant from being prejudiced. In a case involving specific performance and damages, this possible prejudice does not exist because both remedies depend upon an affirmance of the contract.

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 984 F.2d 223, 229 (7th Cir. 1993). Here, the record shows that appellant consistently argued in her complaint and throughout the case that she was entitled to monetary damages if the district court refused to grant specific performance. Damages is not a remedy that is raised for the first time on appeal. The district court acknowledged there is a claim for damages; appellant may assert this claim.

## B. Lack of Damages Determination

Appellant asserts that the district court's determination of abandonment is limited to the remedy of specific performance and that it did not rule on damages. On this appeal, appellant recognizes that (1) the purchase agreement requires that a claim for specific performance must be brought within six months; (2) she did not bring her claim for two years; and (3) the district court held that, at a minimum, she had abandoned her claim for specific performance. Appellant does not appeal the district court's ruling on specific performance.

We agree that the district court's findings of fact, conclusions of law, and order focus on appellant's delay of more than six months and abandonment as precluding the remedy of specific performance. Although the district court's decision is broad enough to cover damages, at no point in the findings, conclusions or memorandum does the district court determine that abandonment applied to damages as opposed to specific performance. Because appellant clearly requested damages as an alternative remedy and presented evidence of damages, we conclude that the district

court erred in not specifically ruling on appellant's damages claim.

## IV.

The last issue is whether appellant so abandoned the purchase agreement as to preclude her recovery of damages. Appellant argues that she did not abandon her rights under the purchase agreement for her damages claim. Because the language in the purchase agreement limits the time for seeking specific performance to six months, abandonment is more easily found for that remedy. Whether abandonment applies equally to a claim for damages is a different and more difficult determination.

Abandonment is the "voluntary relinquishment of an interest by the owner with the intent of terminating his ownership." *Melco Inv. Co. v. Gapp*, 259 Minn. 82, 85, 105 N.W.2d 907, 909 (1960). "A finding of abandonment depends upon the intentions of the parties and is not predicated on any single factor...." *In re Application of Berman*, 310 Minn. 446, 452, 247 N.W.2d 405, 408 (1976). A "party seeking to prove abandonment of a contract must present clear and convincing evidence of an intention by the other party to abandon its rights." *Republic Nat'l Life Ins. Co., v. Marquette Bank & Trust Co. of Rochester*, 295 N.W.2d 89, 93 (Minn. 1980). The intention to abandon a contract may be found "from the facts and circumstances surrounding the transactions and may be implied from the acts of the parties." *Id.* Abandonment "must be clearly expressed, and acts and conduct of the parties to be sufficient must be positive, unequivocal, and inconsistent with the existence of the contract." *Desnick v. Mast*, 311 Minn. 356, 365, 249 N.W.2d 878, 884 (1976).

It does not appear that our courts have considered abandonment as it applies to purchase agreements. However, purchase agreements and contracts for deed are both contracts for the conveyance of real estate. Minnesota statutes recognize this similarity by establishing a common procedure for canceling such contracts. *See* Minn.Stat. §§ 559.21–.217 (2004). Cases dealing with abandonment of contracts for deed are helpful in this purchase agreement area.

Abandonment is a defense in contract-for-deed litigation because a party who abandons a contract for deed is not entitled to enforcement of the contract even if the vendor did not properly cancel the contract for deed, as required by Minn. Stat. § 559.21. *See, e.g., Berman*, 310 Minn. at 452, 247 N.W.2d at 408. The supreme court has outlined a number of factors in determining whether a contract for deed is abandoned, including: (1) failure to pay on the contract for long period of time; (2) failure to take or retain possession of the property; (3) failure to pay real estate taxes; and (4) awareness of the seller's intent to terminate the contract-for-deed interest, coupled with failure to assert any right to the property. *Id.* Possession, in particular, is a significant factor. *See, e.g., Tarpy v. Nowicki*, 286 Minn. 257, 264, 175 N.W.2d 443, 448 (1970) (summarily dismissing defense of abandonment because plaintiff was in possession of property); *Mulvihill v. Finseth*, 396 N.W.2d 889, 893 (Minn.App.1986) (finding no genuine issue of material fact regarding abandonment because vendees possessed property by planting and partially harvesting corn crop), *review denied* (Minn. Jan. 27, 1987). However, a purchaser is entitled to possession under a contract for deed, but a purchase agreement does not usually include any rights of possession. Thus, this factor is not equally applicable to both situations.

Here, appellant took steps to proceed with the closing, checked title to the property, retained possession of the abstract of title, arranged for homeowner's insurance, extended the interest rate commitment from her lender, requested a new closing date, remained on the premises—albeit as a tenant, and ultimately refused to pay rent to force resolution of the matter. During this entire time, the parties represented to Hennepin County that because of appellant's occupancy of the property with a claim of ownership, the property was entitled to homestead treatment for purposes of property taxation. These facts are not consistent with abandonment. As the district court observed, the romantic relationship between the parties may have lulled appellant into complacency.

In considering this matter, we note that because abandonment is an uncertain basis for terminating the rights of a buyer under a purchase agreement, sellers typically either obtain a signed relinquishment of the buyer's rights, obtain a quitclaim deed, or cancel the purchase agreement pursuant to Minn.Stat. §§ 559.21, .217. Respondent was not oblivious to such methods of clearing title. In 1999, he had appellant quitclaim her interest to him to extinguish her rights under an earlier contract for deed.

As discussed earlier, the district court concluded that appellant abandoned her interest in the purchase agreement with reference to specific performance, it did not clearly do so with reference to damages. Based on the record in this proceeding, we cannot conclude that as a matter of law there is clear and convincing evidence that appellant abandoned the purchase agreement for purposes of a damages claim. We have only emphasized facts that contradict abandonment. We recog-

nize that the record presents a mixed picture. For example, the district court found that appellant's pre-closing date request to reduce the purchase price to $52,500 was evidence of abandonment.[3] It is the role of the district court to make this determination.

We remand to the district court to determine whether appellant abandoned her interests in the purchase agreement under the clear and convincing evidence standard, and if the district court determines her interests were not abandoned, to determine what damages are due. Because a full bench trial has been conducted and a record exists, a new trial is not necessary. However, we do not limit the discretion of the district court to reopen the record or conduct such further proceedings as it deems appropriate for a fair determination of the claims.

### DECISION

Although abandonment is an affirmative defense and should be alleged in responsive pleadings, the parties addressed the factual basis for abandonment at trial and the district court's consideration of the defense was not error. Appellant did not waive her claim for damages and the district court erred in not ruling on that claim. The case is remanded for a determination of abandonment with respect to the damages claim, and, if abandonment is not found, the amount of damages.

**Affirmed in part, reversed in part, and remanded.**

---

3. The district court also commented that respondent concedes that that request did not constitute a rejection of the purchase agreement. Given the finding about abandonment, this comment is ambiguous.